KELLEY *v.* SECRETARY OF STATE.

1. STATE LEGISLATURE—PROCEDURE — RESOLUTIONS — STATUTES— HOW PASSED.

A resolution of the legislature requiring the secretary of State to take the necessary steps to submit to the electors of the State a question to be voted upon at a special election called for another purpose is legislation which might be accomplished by bill or joint resolution and therefore requires the votes of a majority of all the members elected to each house (Const. art. 4, § 19), notwithstanding it is denominated a "concurrent" resolution by the legislature.

2. STATUTES—PASSAGE—PROCEDURE—CONSTITUTIONAL PROVISIONS —TIE VOTE—POWER OF LIEUTENANT GOVERNOR.

Section 19 of article 4 of the Constitution requires that at least 17 senators must concur in passing a bill or joint resolution before it can become a law; section 14 of article 5, empowering the lieutenant governor to give the casting vote in cases of an equal division of the senate, being applicable only to resolutions not having the force of laws, assuming that there are such.

3. CONSTITUTIONAL LAW—RIGHT TO INSTRUCT REPRESENTATIVES— CONSTRUCTION OF PROVISION.

Section 10 of article 18 of the Constitution, providing that the people have a right to instruct their representatives, authorizes a plebiscite, if authority be needed, on the question whether the people desire to nominate their candidates for United States senator by direct vote, but has no bearing on the question how the law submitting such question to the people shall be enacted.

Mandamus by Patrick H. Kelley to compel George A. Prescott, secretary of State, to submit a question to the vote of the people as provided by Concurrent Resolution No. 1, Pub. Acts 1907. Submitted July 13, 1907. (Calendar No. 22,389.) Writ denied July 15, 1907.

*Rollin H. Person*, for relator.

*John E. Bird*, Attorney General (*Charles W. McGill* and *George S. Law*, of counsel), for respondent.

CARPENTER, J. Relator, the lieutenant governor of the State, seeks by these proceedings a mandamus compelling respondent, the secretary of State, to take the steps required by him to be taken in the following concurrent (so-called) resolution:

" Resolved by the senate (the house of representatives concurring) that there shall be submitted to the people of the State of Michigan at the election to be held on the seventeenth day of September, nineteen hundred seven, for choosing delegates to the constitutional convention, the question of nomination by direct vote of the qualified electors of the State, of the United States senator, governor and lieutenant governor, the candidate of any party receiving the highest number of votes of such party for either of said offices, to be the candidate for such party for such office, and the secretary of State is hereby required to certify the same to the clerks of the several counties, and give notice of the same to the sheriffs of the several counties of this State, and the sheriffs of the several counties of this State shall be required to give notice of the same to the several townships and wards in said State, in the manner required by law, and the said question shall be printed upon a separate ballot used at said election, as follows (we omit the description of the method of printing).

" Such ballots so prepared shall be sent out by the board of election commissioners at the same time as the ballots to be used at said election.

"All votes cast on said question shall be taken, counted, canvassed and returned as provided by law for the election of State officers." Concurrent Resolution No. 1, Pub. Acts 1907.

This resolution was duly passed by the house of representatives. In the senate—consisting of 32 members—16 senators voted for it, and 16 voted against it. Thereupon the president of the senate, lieutenant governor, the relator, voted for the resolution and declared it adopted. It received the approval of the governor. Did the lieutenant governor, the president of the senate, have a casting vote on this resolution, and did such vote give it legal effect? is the constitutional question presented by these proceedings. Relator answers this question "Yes." Re-

spondent, acting under the advice of the attorney general of the State, answers it "No." This question, though important, is not difficult to determine. We are therefore able, as the exigency of the case demands, to determine it the second day after its submission.

In the judgment of the court, this issue is to be determined by that portion of section 19 of article 4 which reads as follows:

"No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house."

As a majority of the members elected to the senate—for concededly the lieutenant governor was not one of those members—did not vote for this resolution, it is not effective unless one or the other of the two following propositions can be maintained: *First,* that the resolution in question is not a bill or joint resolution within the meaning of the constitutional provision above referred to; *second,* that in case of an equal division of the senate a bill or joint resolution may become a law by the casting vote of the lieutenant governor, the president of the senate. We will consider separately each of these propositions.

*First.* Is the resolution in question a bill or joint resolution, within the meaning of the constitutional provision:

"No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house"?

This language, according to sound principles of constitutional construction, applies to all laws which might be effected by the passage of a bill or the adoption of a joint resolution. Otherwise legislators might, at their pleasure, disregard its prohibition by calling the bill or joint resolution by some other name. It is therefore unimportant that the resolution in question is called a concurrent resolution. It is none the less a bill or joint resolution within the meaning of section 19 of article 4, if, assuming it to

be valid, it is a law which might have been effected by the passage of a bill, or the adoption of a joint resolution. That the object of this resolution might have been so effected—that is, by the passage of a bill or the adoption of a joint resolution—is apparent and obvious. It certainly would have been competent for the legislature to have effected its object by the passage of a bill. Had it done so, we apprehend that no one would have claimed that its action was illegal or improper, because it had not called such a resolution a concurrent resolution. But it is contended that the resolution, assuming it to be effective, is not a law within the meaning of section 19 of article 4. The ground upon which this contention rests is that its object is to gather information to be used only in enacting subsequent laws. But the resolution, if effective, is none the less a law. It is a law for the procurement of such information. If effective, it imposes legal duties upon the secretary of State (and, if it did not, relator is not entitled to relief), upon the clerks, sheriffs, and board of election commissioners of the several counties of the State, and upon all the canvassing boards in the State. It undertakes—and, if effective, it succeeds in that undertaking—to provide a legal election not otherwise provided for, and to surround the same with all the safeguards of law. It follows from this reasoning that, in our judgment, the resolution comes within the provision:

" No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house."

*Second.* Can a bill or joint resolution become a law by the casting vote of the lieutenant governor without the concurrence of a majority of the members elected to each house ? Those who answer this question in the affirmative must and do base their answer upon section 14 of article 5 of the Constitution, which reads as follows:

" The lieutenant governor shall, by virtue of his office, be president of the senate. In committee of the whole he

may debate all questions; and when there is an equal division he shall give the casting vote."

If the above language qualifies the provision:

"No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house"—

And those who answer the question under discussion in the affirmative must maintain that it does qualify it— some startling consequences result. In that event, *whenever* there is an *equal division* on the passage of a bill, the lieutenant governor, as president of the senate, will have a casting vote, and, if he casts that vote in the affirmative, the bill will become law. No sound argument occurs to us by which it may be held that his right to give that casting vote would be limited to cases where 16 senators vote in the affirmative. If he has it where the vote stands 16 yeas and 16 nays, he would, by the same reasoning, have it when the vote stood 14 yeas and 14 nays. An argument leading to such consequences is not sound. Section 14 of article 5 does not say that the lieutenant governor shall have a casting vote for the purpose of making laws; neither is that the necessary construction to be placed upon its language. The most that can be said is this—that if the provision stood alone it is open to that construction. It is also open to the construction— and this is the construction placed upon it by the attorney general—that the right of the lieutenant governor to give a casting vote is limited to proceedings in the committee of the whole. And it is, perhaps, open to the construction that he also has the right to give the casting vote upon the passage of resolutions which do not have the force of law, if, as relator contends, there are such resolutions. On the other hand, the language of section 19 of article 4,—

"No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house,"

Is, by no possibility of reasoning, open to the construction that a bill or joint resolution may become a law without the concurrence of said majority. We have then the task of harmonizing two provisions of the Constitution; one of which states explicitly that—

"No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house,"

And another which is open to a contrary construction. By what principle shall we harmonize them? Obviously this—the doubtful language must receive a construction in harmony with that which is not doubtful. Indeed, in such a case a court is called upon to construe the doubtful provision only, for the explicit provision can have but one meaning and is not open to construction. Section 14 of article 5 must therefore receive a construction in harmony with section 19 of article 4, and it cannot be so construed as to permit the lieutenant governor to give a casting vote for the purpose of making a law. Whether his right to give such casting vote is limited to proceedings in committee of the whole, or extends to resolutions, if there be such, which do not have the force of law, is a question which is not before us and which we do not determine. It results from this reasoning that the resolution in question is legally ineffective.

Before concluding this opinion, we deem it our duty to refer to section 10 of article 18 of the Constitution, which is called to our attention by relator. That section reads:

"The people have the right peaceably to assemble together, to consult for the common good, to instruct their representatives, and to petition the legislature for redress of grievances."

It has no bearing whatever on the legal question involved in this suit. It may afford justification, if justification were otherwise needed, for the enactment of a law like that attempted by the resolution before us; but it is quite sufficient to say that such a law must be enacted in

accordance with the Constitution.    It must receive a con-
currence of a majority of all the members elected to each
house.

The application for a mandamus is therefore denied.

McALVAY, C. J., and GRANT, BLAIR, MONTGOMERY,
OSTRANDER, HOOKER, and MOORE, JJ., concurred.