GEORGE E. BOHRER, Appellant, v. WALTER H. TOBERMAN, Secretary of State of the State of Missouri, ET AL., Respondents, No. 41927—227 S. W. (2d) 719.

Court en Banc, March 13, 1950.

*Bertram W. Tremayne, Ralph R. Neuhoff, Jr.,* and *Neuhoff, Tremayne & Schaefer* for appellant.

246

*J. E. Taylor,* Attorney General, *Gilbert Lamb* and *C. B. Burns, Jr.,* Assistant Attorneys General, for respondents.

LEEDY, J.—This is an action to enjoin the Secretary of State and other officials from submitting to the electors at a special election to be held Tuesday, April 4, 1950, a certain legislative act upon which a referendum was ordered by petition of the people under § 52, Art. III of the Constitution of Missouri, 1945. The plaintiff has appealed from the order and judgment of the trial court dismissing his petition on the ground that it failed to state a claim upon which relief can be granted.

The referred measure (which provides, among other things, for an increase in the state motor fuel tax) is known as "House Committee Substitute for House Bill No. 185," passed by the 65th General Assembly and approved by the Governor on August 27, 1949. Laws 1949, p. ——; §§ 8411.1 et seq., Mo. R. S. A. The referendum was ordered by force of petitions therefor filed in the office of the Secretary of State on October 10, 1949, such petitions having been signed by the requisite number of legal voters in the number of congressional districts in the state prescribed by the constitutional provision above-mentioned.

On November 30, 1949, there was introduced in the House of Representatives the resolution which gives rise to this controversy.

248

Designated as "House Concurrent Resolution No. 7,"[1] it ordered a special election for the referendum in question, and fixed the date thereof. The procedure followed in the adoption of the resolution did not conform to the requirements of §§ 21, 24, 27 and 30, Art. III of the Constitution, with respect to *bills*. (This and all other references to constitutional provisions are to the Constitution of Missouri, 1945, unless otherwise expressly noted.) For example, in the House, the presiding officer declared the resolution adopted on a roll call showing 65 votes cast in favor of adoption and 45 against; whereas under the express provisions of § 27, Article III of the Constitution, it is required that on final passage of a bill, "a majority of the members elected to each house be recorded as voting favorably."

The limited issue upon which this case turns is whether, as appellant contends, the General Assembly, in exercising its power to order a special referendum election in an instance of this kind, is imperatively required to conform its proceedings to those constitutional provisions governing the passage of *bills*. The respondents, on the other hand, take the position that the constitutional provisions invoked by appellant are wholly inapplicable, and that the Legislature was at liberty to adopt such procedure as it saw fit in ordering the special election, and that action by concurrent resolution was appropriate and efficacious for the purpose.

■ Appellant's claim is based primarily on Art. III, § 52 of the Constitution, the text of which is set out in the margin.[2] Other specific constitutional provisions are also relied on, but appellant's whole contention hinges upon the construction to be given § 52,

(1) "Be it Resolved by the House of Representatives of the 65th General Assembly, the Senate Concurring Therein, as Follows:

"Pursuant to referendum petitions duly filed in the office of the Secretary of State for the State of Missouri, on the 10th day of October, 1949, a special election, to be conducted pursuant to the laws and constitutional provisions of this state, applicable to general elections of the state, is hereby ordered and shall be held in the State of Missouri on Tuesday, the 4th day of April, 1950, submitting to the qualified voters of the state for their approval or rejection House Committee Substitute for House Bill No. 185, passed by the 65th General Assembly and approved by the Governor on August 27, 1949."

(2) Art. III, § 52: "A referendum may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety, and laws making appropriations for the current expenses of the state government, for the maintenance of state institutions and for the support of public schools) either by petitions signed by five per cent of the legal voters in each of two-thirds of the congressional districts in the state, or by the general assembly, *as other bills are enacted*. Referendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly which passed the bill on which the referendum is demanded.

"The veto power of the governor shall not extend to measures referred to the people. All elections on measures referred to the people shall be had at the general state elections, *except when the general assembly*

supra, and so it may become unnecessary to notice the other provisions invoked by him.

The initiative and referendum provisions of our Constitution were taken from the Constitution of the State of Oregon. The section now under scrutiny appears to be the same in both instruments. There are a number of other states with varying although somewhat similar constitutional provisions, but in none of those states, nor in our own, has the precise question here involved ever been ruled. And, we may add, it is by no means free from difficulty.

It is apparent from a reading of § 52, supra, that a limitation upon the power of the Legislature to order a measure referred to the people (as distinguished from an order for a *special election* at which to determine such referendum) arises from the use of the words "as other bills are enacted." This language means that legislative power to order such a referendum in any other way than by bill, is denied. It may be said that, for reasons presently to be noticed, such power would undoubtedly reside in the legislative branch of the government in the absence of this or some other restraint placed thereon by the Constitution. In the event the General Assembly orders referendums and fails to also order special elections therefor, then, by the express terms of the second paragraph of the section in question, all elections on such measures "shall be had at the general state elections," the time of the latter being fixed by Art. VIII, § 1, as "* * * the Tuesday next following the first Monday in November of each even year, unless a different day is fixed by law," etc.

This brings us to the decisive and crucial point as to whether, under a fair construction of § 52, the words "as other bills are enacted" constitute a further limitation upon legislative power extending to and governing the form of legislative action "when the general assembly shall order a special election."

Two decisions are cited by appellant on the point now under consideration, both from other jurisdictions. They are State ex rel. Swan v. Kozer, Secy. of State, 115 Ore. 638, 239 Pac. 805, and Kelley v. Secretary of State, 149 Mich. 343, 112 N. W. 978. They are not controlling. The Kozer case upheld the validity of the governor's veto of a measure designated, treated, and passed by the legislative body as a bill for a law calling a special election under a constitutional provision precisely like § 52, here involved. As against the contention that the effect of the measure was but an order for a special election under the constitutional provision just mentioned, it was held to have all the component parts of a bill, and complied with the several

*shall order a special election.* Any measure referred to the people shall take effect when approved by a majority of the votes cast thereon, and not otherwise. This section shall not be construed to deprive any member of the general assembly of the right to introduce any measure." (Emphasis supplied.)

constitutional provisions relating to subject matter, style, appropriations, etc., and that it appeared from the measure itself that the Legislature, in passing it, "intended to enact a law, and not to pass a mere resolution." After having so held, the court appended an additional reason, which it was careful to refer to as "persuasive, though not controlling," and that was that nine separate assemblies had passed laws such as the one under consideration, and this amounted to a legislative interpretation of the constitution as necessitating the enactment of a law authorizing a special election when an election is to be had upon referred measures at any time other than the time of the biennial regular general election. It is this buttressing of the court's holding which is stressed here. But in Missouri there has been no such legislative construction. Indeed, this appears to be the single instance in which a special election under the referendum provisions of the present or pre-existing Constitutions has been ordered, and if this is to be regarded as a legislative interpretation of the Constitution, it is, of course, the other way.

The legislative action involved in Kelley v. Secretary of State, supra, was the passage of what was styled as a "concurrent resolution," which required that there be submitted to the people, at a special election therein fixed, the question of the nomination by direct vote of the people of certain officers, and making detailed provision for conducting such special election. It was clearly a law, as the court held, and none the less so because called a resolution. It had not received the concurrence of a majority of all the members elected to each house, as required by the Michigan Constitution to make a bill or joint resolution effective. The court, accordingly, declined to issue mandamus to compel the secretary of state to perform the duties required of him by the so-called resolution. This is sufficient to show that the question there involved is not comparable to the one at bar.

In the absence of any direct or authoritative decision, we shall approach the question in the light of the fundamental principle that a state constitution is not a grant, but a restriction upon the powers of the legislature. "A legislative assembly, when established, becomes vested with all the powers and privileges which are necessary and incidental to a free and unobstructed exercise of its appropriate functions. These powers and privileges are derived not from the Constitution; on the contrary, they arise from the very creation of a legislative body, and are founded upon the principle of self-preservation. The Constitution is not a grant, but a restriction upon the power of the Legislature, and hence an express enumeration of legislative powers and privileges in the Constitution cannot be considered as the exclusion of others not named unless accompanied by negative terms. A legislative assembly has, therefore, all the

powers and privileges which are necessary to enable it to exercise in all respects, in a free, intelligent, and impartial manner, its appropriate functions, except so far as it may be restrained by the express provisions of the Constitution, or by some express law made unto itself, regulating and limiting the same." Cushing, Law and Practice of Legislative Assemblies, p. 221.

We are in accord with the view expressed by the New York Court of Appeals in Moran v. LaGuardia, 270 N. Y. 450, 1 N. E. 2d 961, 104 A. L. R. 1160, that "*Ordinarily,* when we contemplate action by the Legislature, we have in mind a statutory enactment." (Emphasis supplied.) But it is clear that the forms in which some of the proceedings of the General Assembly may be expressed (except laws) are not limited to bills. Our Constitution provides that "No *law* shall be passed except by bill," (§ 21, Art. III) "nor shall a bill be finally passed, unless * * * a majority of the members elected to each house be recorded as voting favorably" (§ 27, Art. III). § 31, Art. III requires that "All bills and *joint* resolutions passed by both houses shall be presented to and considered by the governor," etc. § 32 provides for the procedure after a veto, and § 33 makes provision for legislative action by "*joint* resolution" where the governor shall fail to return a bill presented to him. But the Constitution also takes cognizance of those resolutions "to which the concurrence of the senate and house of representatives may be necessary," by requiring that the same (with certain exceptions not here pertinent) "shall be presented to the governor, and before the same shall take effect, shall be proceeded upon in the same manner as in the case of a bill: Provided, that no resolution shall have the effect to repeal, extend, or amend any law" (§ 8, Art. IV). The latter section (applicable to concurrent resolutions) does not mean that such a resolution shall be proceeded upon in the first instance " in the same manner as in the case of a bill." On the contrary, it means that *after* such a resolution shall have been presented to the governor, and before it shall take effect, it shall then be proceeded upon in the same manner as in the case of a bill. Such a construction would give further effect to § 31, Art. III by applying its provisions to concurrent resolutions as well as to "bills and joint resolutions," and also to § 32, Art. III, requiring a two-thirds vote of the elected members to override the governor's disapproval, as in the case of a bill.

Unlike ordinary legislation, the character of such a legislative purpose is temporary—calling a particular election and fixing the date thereof. Nothing further in the matter of setting up election machinery, or in other respects, is required because of the force of § 53, Art. III, providing that "In submitting the same to the people [initiative and referendum proposals] the secretary of state and all other officers shall be governed by general laws." See, also, Chap. 77, § 12286-12295, R. S. 1939, and Mo. R. S. A. Moreover,

it is not the public policy of this state that all special state-wide elections for the purpose of submitting proposals to the electors for their approval or rejection shall be called only by statute. In this connection, it may be noted that § 2, Art. XII provides for the submission of constitutional amendments proposed either by the general assembly or by the initiative "at the next general election, or at a special election called by the governor prior thereto, at which he may submit any of the amendments." '

■ If, upon a consideration of all the foregoing, a doubt still exists as to the validity of the challenged legislative action, ■ then, under well-established precedents, the deference due ·a co-ordinate branch of the government requires that the doubt be resolved in favor of, and against nullifying, the action taken, if it is possible to do so by any reasonable construction of that action, or by any reasonable construction of the Constitution. The courts cannot interfere with such legislative action, unless it is clear that the action taken is contrary to some mandate of the Constitution. State ex rel. Fulton v. Zimmerman, 191 Wis. 10, 210 N. W. 381, 383. See Mo. Digest, Constitutional Law, Key No. 48. We, accordingly, hold that the language of § 52, "as other bills are enacted," does not apply to the specific legislative action here under scrutiny. The judgment dismissing plaintiff's action should be, and it is, affirmed. All concur.