**OPINION OF THE JUSTICES** of the Supreme Court in Response to Questions Propounded by the Governor of Delaware.

Supreme Court of Delaware.

Dec. 29, 1966.

To His Excellency Charles L. Terry, Jr.
Governor of Delaware

Reference is made to your letter dated December 21, 1966, addressed to the Chief Justice, requesting the members of the Supreme Court to give you their opinions, under 29 Del.C. § 2102,[1] upon the proper construction of the Constitution of the State of Delaware as to the right of the Lieutenant Governor,. as President of the Senate, to vote when the Senate is equally divided.

Your request was based upon the provision of § 2102 which states that the Governor may make such request "whenever he requires it for public information."

The specific questions presented in your letter are the following:

"1. Does the President of the Senate have the authority to count himself a member of the Senate for purposes of establishing a quorum?

"2. Does the President of the Senate have the authority to cast a tie-breaking vote on roll calls for the passage or adoption of the following:

"(a) Senate and House Bills

"(b) Senate and House Joint Resolutions

"(c) Senate and House Concurrent Resolutions

"(d) Senate Resolutions

"(e) Senate Motions of a Procedural nature

"(f) Confirmation of Gubernatorial appointments."

I.

With these questions in mind, we find the following provisions of the Delaware Constitution, Del.C.Ann. pertinent:

Art. 3, § 19 provides that the Lieutenant Governor " * * * shall be President of the Senate, but shall have no vote unless the Senate be equally divided."

Art. 2, § 8 provides that " * * * a majority of all the members elected to each House shall constitute a quorum to do business; but a smaller number may adjourn from day to day, and shall have power to compel the attendance of absent members, in such manner and under such penalties, as shall be deemed expedient."

Art. 2, § 10 provides that " * * * No bill or joint resolution, except in relation to adjournment, shall pass either House * * * without the concurrence of a majority of all the members elected to each House."

Art. 3, § 9 provides that the Governor shall have power to appoint "by and with the consent of a majority of all the members elected to the Senate" such officers as he may be authorized by the Constitution or by law to appoint, where "the salary, fees and emoluments of office" exceed the sum of $500. annually.

Art. 3, § 10 provides that the Governor shall appoint a Secretary of State "by and with the consent of a majority of all the members elected to the Senate."

Art. 4, § 3 provides that the Justices of the Supreme Court, the Chancellor and the Vice Chancellors, and the Judges of the Superior Court and of the Orphans' Court shall be appointed by the Governor "by and

---

1. 29 Del.C. § 2102 provides:
    "§ 2102. Request for judicial opinions
    "The Governor may, whenever he requires it for public information, or to enable him to discharge the duties of his office with fidelity, request the members of the Supreme Court to give him their opinions in writing touching the proper construction of any provision in the Constitution of this State or of the United States, or the constitutionality of any law enacted by the Legislature of this State." See also 10 Del.C. § 141.

with the consent of a majority of all the Members elected to the Senate."

Art. 4, § 30 provides that justices of the peace and the judges of statutory courts shall be appointed by the Governor "by and with the consent of a majority of all the Members elected to the Senate."

## II.

The threshold question is whether the Lieutenant Governor, as President of the Senate, is a "member" of the Senate within the meaning of the above mentioned constitutional provisions. It is our opinion that he is not. The following are our reasons:

A. The Act of 1964 (29 Del. C. § 602), now governing, provides that "The Senate shall be composed of 18 members * * *"; and that "The State shall be divided into 18 Senatorial Districts, from each of which shall be chosen, by the qualified electors thereof, one Senator." This format for the makeup of the Senate was taken from the prior constitutional provisions for 21 "members", one to be elected from each of 21 senatorial districts (Constitutional Amendment of 1963, 54 Delaware Laws, Chap. 1); and from the original constitutional provision for 17 "members", one to be elected from each of 17 senatorial districts. Del. Const., Art. 2, § 2. It is clear therefrom that the "membership" of the Senate is limited to one Senator from each senatorial district.

B. Our conclusion is substantiated by the careful delineation elsewhere in the Constitution between "members of the General Assembly" and the President of the Senate. E. g., Art. 2, § 15 regarding compensation; compare Constitutional Debates, 1897, pp. 914–915.

C. The office of Lieutenant Governor was fashioned upon the office of Vice President of the United States. See Constitutional Debates, 1897, p. 298. The portion of Art. 3, § 19 providing for the voting function of the Lieutenant Governor obviously was taken from Art. 1, § 3 of the Constitution of the United States: "The Vice President of the United States shall be President of the Senate, but shall have no Vote unless they be equally divided." Historically, the Vice President of the United States has not been considered a member of the United States Senate. See 1 Story on the Constitution (2d Ed.) pp. 514–517 (1851).[2] The framers of the Delaware Constitution did not intend that Art. 3, § 19 would make the Lieutenant Governor a member of the Senate any more than the Federal Constitution "would make the Vice-President of the United States a member of the Senate over which he presides." Constitutional Debates, 1897, p. 2253.

■ We conclude, therefore, that the Lieutenant Governor is not a "member" elected to the Senate within the meaning of the constitutional provisions hereinabove mentioned.

## III.

The conclusion thus reached impels a negative answer to question No. 1 regarding the establishment of a quorum in the Senate. As has been noted, Art. 2, § 8 provides that "a majority of all the members elected to each House shall constitute a quorum to do business." Since the Lieutenant Governor is not a member of the Senate, he may not be counted for quorum purposes under Art. 2, § 8.[3] Compare Annotation, 40 A.L. R. 808, 817.

---

2. "There is no novelty in the appointment of a person to preside, as speaker, who is not a constituent member of the body, over which he is to preside. In the house of lords in England the presiding officer is the lord chancellor, or lord keeper of the great seal, or other person appointed by the king's commission; * * *." Ibid, p. 515.

3. This is in accord with the ancient practice in the U. S. Senate described in Thomas Jefferson's Manual of Parliamentary Practice, pp. 62–63, in discussing the function of the Vice President as Presiden of the Senate:

"In general, the chair is not to be taken till a quorum for business is present; unless, after due waiting, such a quorum

## IV.

More difficult are the answers to Question No. 2. The difficulty arises from an apparent conflict between Art. 3, § 19, on the one hand, vesting in the Lieutenant Governor an unlimited tie-breaking or casting vote, and the various constitutional provisions hereinbefore mentioned, on the other hand, requiring action by "a majority of all the members elected" to the Senate. It may be asserted that, because he is not a member of the Senate, the Lieutenant Governor is divested of the casting vote when the Senate is acting upon a matter requiring action by a majority of its members. In our judgment, this is not the case.

The applicable rules of construction require that effect be given, if possible, to the whole Constitution and to every word thereof. If different portions of the Constitution seem to conflict, they must be harmonized if possible. That construction must be favored which will render every word of the instrument operative; and that construction must be avoided which would make any provision idle and nugatory. Every provision of the Constitution must be construed, whenever possible, to give effect to every other provision. Otherwise stated, whenever avoidable, no constitutional provision should be so construed as to nullify, or substantially impair, any other constitutional provision or to produce an irrational result. 1 Cooley's Constitutional Limitations (8th Ed.) 127–129.

Applying these cardinal rules of construction, we are of the opinion that Art. 3, § 19 may be harmonized with the other constitutional provisions hereinbefore mentioned. The Constitutional Debates of 1897 (pp. 912–913, 917–923, 2756–2760) make manifest the strong aversion of the framers of the Constitution to important legislative action by a majority of a quorum of either House. There was, apparently,

general dissatisfaction with such practice and procedure then prevailing. Because of the smallness in number of each House, and to insure the expression of the will of the majority of the people of the State and the attendance of the Legislators, the framers of the Constitution resolved to substitute the requirement that the more important legislative functions and decisions be performed and made by a majority, or greater portion, of all the members elected to each House, rather than of a quorum as theretofore.

Implementing that resolve, the carefully worded provisions hereinabove mentioned, requiring action by a majority of "all the members elected", were adopted for certain more important legislative functions. Equally deliberate and uniform were the provisions requiring decisions by greater than a majority of the members elected: the expulsion of a member—by "two-thirds of all the members elected" to the House involved, Art. 2, § 9; the enactment of laws relating to certain roads and highways—by "two-thirds of all the members elected to each House", Art. 2, § 19; the removal of State officials by the Governor—upon address of "two-thirds of all the members elected to each House", Art. 3, § 13; the override of gubernatorial vetoes—by "three-fifths of all the members elected", Art. 3, § 18; the creation of statutory courts—"with the concurrence of two-thirds of all the members elected to each House", Art. 4, § 1; the vesting of certain criminal jurisdiction in statutory courts— "with the concurrence of two-thirds of all the members elected to each House", Art. 4, § 28; on impeachment, no conviction "without the concurrence of two-thirds of all the Senators", Art. 6, § 1; the borrowing of money or the creation of State debt —"with the concurrence of three-fourths of all the members elected to each House", Art. 8, § 3; the appropriation of public money or pledge of the State credit to any

be despaired of, when the chair may be taken and the House adjourned. And whenever, during business, it is observed that a quorum is not present, any member may call for the House to be counted, and being found deficient, business is suspended."

county, municipality or corporation—"with the concurrence of three-fourths of all the members elected to each House", Art. 8, § 4; the enactment of general corporation laws—with "the concurrence of two-thirds of all the members elected to each House", Art. 9, § 1; constitutional amendments—by agreement of "two-thirds of all the members elected to each House" of two consecutive General Assemblies, Art. 16, § 1.

Eliminating the actions of the Senate thus required to be made by a majority or more of the members elected, it becomes clear that the matters unspecified, thus left for action by a majority of a quorum, were deemed comparatively unimportant.

It is unreasonable to assume, we think, that the framers of the Constitution intended to limit the casting vote, vested in the Lieutenant Governor by Art. 3, § 19, to those less important functions and decisions which were left by the Constitution to a majority of a quorum of the Senate. It is more reasonable to assume, in our opinion, that the casting vote of the Lieutenant Governor was intended to break ties in the more important matters before the Senate, as well as the less important ones. It is in the public interest that there be a proper method to break deadlocks and to avoid impasse in the Senate. This was the rationale for vesting in the Vice President the casting vote in the United States Senate: "to secure at all times the possibility of a definitive resolution of the body." The Federalist Papers, No. 68: Hamilton. The more important the matter pending for decision, the more essential such tie-breaking device is to the public welfare.

■■■ By application of the rules of constitutional interpretation hereinabove set forth, we conclude that the casting vote provision of Art. 3, § 19 has not been modified, restricted or limited by the constitutional provisions which require action by a majority of the members of the Senate.

4. A careful reading of the Constitutional Debates, 1897, on this provision clearly supports this conclusion. See pp. 297–

That which is implied is as much a part of the Constitution as that which is expressed. Implicit in Art. 3, § 19, we think, is the unqualified power of the Lieutenant Governor to vote on any question—large or small—whenever the Senate is equally divided. This conclusion maintains the underlying principle of the "majority of members" provisions: the expression of the will of the majority of the people of the State. That principle is not violated by the vote of the Lieutenant Governor who is elected by all of the people of the State. See Constitutional Debates, pp. 298–299, 302. To conclude otherwise, on the other hand, would be to substantially impair, if not nullify, the casting vote provision of Art. 3, § 19. By holding this provision to be predominant, as we believe the framers of the Constitution intended,[4] repugnancy of the various provisions under consideration is avoided insofar as possible, and maximum effectiveness is given to the objects and purposes of each.

There is very little precedent on the questions before us. Our conclusion is supported, generally, by State ex rel. Easbey v. The Highway Patrol Board, 140 Mont. 383, 372 P.2d 930 (1962). We have considered Kelley v. Secretary of State, 149 Mich. 343, 112 N.W. 978 (1907) and Coleman v. Miller, 146 Kan. 390, 71 P.2d 518 (1937). We find those cases unpersuasive.

\* \* \*

The foregoing represents the views and opinions of each of the members of this Court. Thereupon, the following answers are made to the questions presented:

Question No. 1: Negative.

Question No. 2(a)-(f): Affirmative.

Respectfully submitted,

DANIEL F. WOLCOTT, Chief Justice

JAMES B. CAREY, Justice.

DANIEL L. HERRMANN, Justice

305, 321, 327, 379, 380, 716, 719, 2638–2641, 2655–2657.