ADVISORY OPINION ON CONSTITUTIONALITY OF 1978 PA 426

Docket No. 62119. Argued November 15, 1978 (Calendar No. 13).—
Decided December 22, 1978.

The Governor requested an advisory opinion on the constitutionality of 1978 PA 426, which increases gasoline and diesel fuel
taxes on January 1, 1979 as a part of a state transportation
program. The Lieutenant Governor cast an affirmative vote
during the final consideration of the bill when the Senate was
equally divided 19 to 19. Opponents of the bill challenged its
enactment on the ground that the Lieutenant Governor, as a
member of the executive branch and a non-elected member of
the Legislature, is prohibited from voting during final consideration of the bill by the constitutional provision that requires "a
majority of the members elected to and serving in each house"
to enact a law. *Held:*

The Lieutenant Governor may cast a tie-breaking vote during
the final consideration of a bill when the Senate is equally
divided, and 1978 PA 426 was constitutionally enacted.

1. The primary rule of construing the words in a constitution
is to give effect to the plain meaning of such words as understood by the people who adopted it. The Constitution clearly
provides that the Lieutenant Governor may vote if the Senate
is "equally divided". Certainly the Michigan electorate in ratifying the 1963 Constitution ascribed to the word "vote" the
plain meaning of casting an effective vote. It would be incongruous to give the Lieutenant Governor a tie-breaking vote in
preliminary stages and at the same time to deny that vote at
the final consideration of the same legislation. If the drafters of
the Constitution had intended such a result, they could have
modified the plain language of the Constitution to limit the
Lieutenant Governor's tie-breaking power to those situations.

2. When there is conflict between general and specific provisions in a constitution, the specific provision must control,
because the specific provision is regarded as a limitation on the

REFERENCES FOR POINTS IN HEADNOTES
[1-6, 8] 72 Am Jur 2d, States, Territories, and Dependencies § 39.
[7] 16 Am Jur 2d, Constitutional Law § 49.

general provision's grant of authority. In this case the provision requiring a majority vote of elected members of each house for passage of a bill is the general provision. The specific provision dealing with the power of the Lieutenant Governor to cast a vote controls in those rare instances where the Senate is equally divided on the final passage of a bill.

3. A court, in construing constitutional provisions where the meaning may be questioned, should have regard to the circumstances leading to their adoption and the purpose sought to be accomplished. The "Address to the People" and the record of the 1961 Constitutional Convention make it clear that the framers of the Constitution intended that the Lieutenant Governor cast a tie-breaking vote in all deadlock situations, thereby permitting the legislative process to move forward.

4. If conflicting constitutional provisions cannot be harmonized, the provision adopted later in time controls. The 1908 Constitution prohibited the Lieutenant Governor from having any vote in the Senate, but did have a virtually identical provision to that which requires a majority vote to enact legislation. Were the Court to perceive an irreconcilable conflict, the constitutional provision which permits the Lieutenant Governor to vote when the Senate is equally divided would control since it was adopted after the other provision. There is no evidence in the record of the 1961 Constitutional Convention that the enactment provision was intended as a limitation on the Lieutenant Governor's power to cast a tie-breaking vote in the Senate. The 1961 Constitutional Convention delegates could have followed the 1908 Constitution and denied the Lieutenant Governor any vote, or reinstated the language of the 1850 Constitution providing him a tie-breaking vote in the committee of the whole. Instead, the delegates eliminated the restrictive language used in the 1850 Constitution, which removed any suggestion that the Lieutenant Governor's voting power is limited to a particular stage of the proceedings.

Justice Fitzgerald, joined by Chief Justice Kavanagh, dissented. They would hold that the Court is bound by its prior decision that the casting vote provision of the Constitution of 1850, which was reinstated in the Constitution of 1963, cannot apply to the final passage of a bill in view of the constitutional provision requiring the concurrence of a majority of the elected members of each house to enact legislation. A constitutional provision which has received a settled judicial construction, and is afterward incorporated into a new or revised constitution, or amendment, will be presumed to have been retained with a knowledge of the previous construction, and courts will feel

bound to adhere to it. Had the framers of the Constitution of 1963 deemed it prudent to qualify the language of the Constitution to allow the Lieutenant Governor to cast the deciding vote on the final passage of a bill when the Senate is equally divided, it must be presumed that they would have done so with clear language to that effect. The provision setting forth the Lieutenant Governor's power to cast the deciding vote when the Senate is equally divided should be construed to be limited to procedural matters only in view of the absolute language requiring an affirmative vote by a majority of members elected to and serving in each house for the final passage of a bill.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW — LIEUTENANT GOVERNOR — EQUALLY DIVIDED SENATE — VOTE.

The Lieutenant Governor may cast a tie-breaking vote during the final consideration of a bill where the Senate is equally divided (Const 1963, art 4, § 26; Const 1963, art 5, § 25).

2. CONSTITUTIONAL LAW — LIEUTENANT GOVERNOR — EQUALLY DIVIDED SENATE — VOTE — WORDS AND PHRASES.

The Constitution clearly provides that the Lieutenant Governor may vote if the Senate is equally divided; certainly the Michigan electorate in ratifying the 1963 Constitution ascribed to the word "vote" the plain meaning of casting an effective vote and if the drafters of the Constitution had intended to deny the Lieutenant Governor a vote at the final consideration of legislation, they could have modified the plain language of the Constitution (Const 1963, art 5, § 25).

3. CONSTITUTIONAL LAW — LIEUTENANT GOVERNOR — EQUALLY DIVIDED SENATE — VOTE.

The specific constitutional provision dealing with the power of the Lieutenant Governor to cast a vote in those rare instances where the Senate is equally divided on the final passage of a bill prevails over a more general provision requiring a majority vote of elected members of each house for passage of a bill (Const 1963, art 4, § 26; Const 1963, art 5, § 25).

4. CONSTITUTIONAL LAW — LIEUTENANT GOVERNOR — EQUALLY DIVIDED SENATE — VOTE.

The record of the 1961 Constitutional Convention makes it clear that the framers intended that the Lieutenant Governor cast a tie-breaking vote in all deadlock situations, thereby permitting

the legislative process to move forward (Const 1963, art 4, § 26; Const 1963, art 5, § 25).

5. CONSTITUTIONAL LAW — STATUTES — LIEUTENANT GOVERNOR — EQUALLY DIVIDED SENATE — VOTE.

The delegates to the 1961 Constitutional Convention, by eliminating the restrictive language used in the 1850 Constitution which limited the Lieutenant Governor's power to cast a tie-breaking vote in the Senate to proceedings in the committee of the whole, removed any suggestion that the Lieutenant Governor's voting power is limited to a particular stage of the legislative proceedings (Const 1850, art 5, § 14; Const 1963, art 5, § 25).

DISSENTING OPINION BY FITZGERALD, J.

6. CONSTITUTIONAL LAW — LIEUTENANT GOVERNOR — EQUALLY DIVIDED SENATE — VOTE — COMMON LAW.

*The Supreme Court is bound by its prior construction that the provision of the Constitution of 1850, which was reinstated in the Constitution of 1963, permitting the Lieutenant Governor to cast a vote if the Senate is equally divided cannot apply to the final passage of a bill in view of the constitutional provision requiring the concurrence of a majority of the elected members of each house to enact legislation (Const 1850, art 4, § 19; art 5, § 14; Const 1963, art 4, § 26; art 5, § 25).*

7. CONSTITUTIONAL LAW — COMMON LAW — CONSTITUTIONAL CONSTRUCTION.

*A constitutional provision which has received a settled judicial construction, and is afterward incorporated into a new or revised constitution, or amendment, will be presumed to have been retained with a knowledge of the previous construction, and courts will feel bound to adhere to it.*

8. CONSTITUTIONAL LAW — LIEUTENANT GOVERNOR — EQUALLY DIVIDED SENATE — VOTE.

*The provision of the Constitution setting forth the Lieutenant Governor's power to cast the deciding vote when the Senate is equally divided should be construed to be limited to procedural matters only in view of the absolute language requiring for the final passage of a bill an affirmative vote by a majority of members elected to and serving in each house; had the framers of the 1963 Constitution deemed it prudent to qualify the language of the Constitution to allow the Lieutenant Governor*

*to cast the deciding vote on the final passage of a bill when the Senate is equally divided, it must be presumed that they would have done so with clear language to that effect (Const 1963, art 4, § 26; Const 1963, art 5, § 25).*

*Frank J. Kelley,* Attorney General, and *Robert A. Derengoski,* Solicitor General.

*Charles D. Hackney,* Assistant Attorney General, in support of constitutionality.

*Eugene Krasicky,* First Assistant Attorney General for Litigation, and *George L. McCargar,* Assistant Attorney General, in opposition to constitutionality.

Amici Curiae:

*Downs, Pirich & Downs, P.C.,* for Capitol Area Rail Council, Michigan Rail Action Association, Highway Users Federation of Michigan, City of Detroit, City of Livonia, City of Flint, City of Highland Park, Michigan Road Builders Association, Detroit and Mackinac Railroad, Tuscola and Saginaw Bay Railroad, Kalamazoo County Road Commission, Genesee County Road Commission, Van Buren County Road Commission, Oscoda County Road Commission, Muskegon County Road Commission, Wayne County Road Commission, Leelanau County Road Commission, Senator Robert VanderLaan and Representative William Ryan.

*James Dunn, P.C.* (by *James F. Dunn* and *Sara J. Basso),* for Michigan Public Transit Association.

*Frederick S. Anderson* for Senator William Faust, Senate Majority Leader.

*Peter M. Alter* for Committee on Constitutional Law, State Bar of Michigan.

BLAIR MOODY, JR., J. The Court has been asked by the Governor for an advisory opinion on the constitutionality of 1978 PA 426, enrolled House Bill 4407. Although two questions were incorporated in the Court's order granting the request, for purposes of simplicity and clarity, we combine the two questions into one. The single question before the Court is whether the Lieutenant Governor's affirmative vote under the provisions of Const 1963, art 5, § 25, may be counted for the final passage of House Bill 4407 when the Senate, with all members voting, divided equally, in view of the apparently contradictory language of Const 1963, art 4, § 26, providing that "[n]o bill shall become a law without the concurrence of a majority of the members elected to and serving in each house". We answer this question in the affirmative. The Lieutenant Governor may cast a tie-breaking vote during the final consideration of a bill when the Senate is equally divided, pursuant to Const 1963, art 5, § 25.[1]

---

[1] Attorney General Frank Kelley, in an unnumbered letter opinion, reached the same conclusion in construing the two constitutional provisions at issue. The Attorney General found support for his construction in the Address to the People:

"It is fundamental that you read the pertinent provisions of the Constitution in construing the same together so as to give, insofar as possible, reasonable effect to each of such provisions. Applying such rule, the 1963 Constitution may only be construed as authorizing the Lieutenant Governor to cast the deciding vote in case of a tie. Certainly such provision would be applicable to a tie upon the passage of a legislative bill. Such construction is confirmed by the Address of [*sic*] the People, which states in part with reference to Article V, Section 25:

" 'A significant change is the provision that the lieutenant governor, in his capacity as president of the senate, may vote in case of equal division.' " OAG, letter to Senator Raymond D. Dzendzel, January 29, 1964.

I

On September 30, 1978, Governor William Milliken signed into law enrolled House Bill 4407 (1978 PA 426), which increases gasoline and diesel fuel taxes on January 1, 1979. One of a series of transportation bills, the bill was passed by the Michigan House of Representatives on September 14, 1978, by a vote of 57 to 50. Michigan House J (No. 101, 1978) 2984. When the bill was considered for final passage by the Senate on September 26, 1978, 19 senators voted in favor of the bill and 19 senators voted against it. After the roll call vote of the individual elected senators resulted in a tie, pursuant to the provisions of Const 1963, art 5, § 25, Lieutenant Governor James Damman cast a tie-breaking affirmative vote and the bill was declared to have passed. Michigan Senate J (No. 105, 1978) 2127.

Immediately, opponents of the bill began to challenge the constitutionality of the action taken by the Lieutenant Governor. This challenge is based upon a perceived conflict between Const 1963, art 5, § 25 and Const 1963, art 4, § 26. It is maintained that art 4, § 26 prohibits non-elected members of the state Legislature from voting on the final passage of a bill and, therefore, the Lieutenant Governor, as a member of the executive branch, acted outside the scope of his constitutional powers by casting the tie-breaking vote on the bill in question.

In view of this controversy, the Governor has requested that this Court issue an advisory opinion relative to the action taken by the Lieutenant Governor. On October 11, 1978, the Court agreed to provide the advisory opinion.

II

The question before the Court is whether the

Lieutenant Governor, as President of the Senate, may constitutionally cast a tie-breaking vote during the final consideration of a bill when all members elected to and serving therein have voted and the Senate is equally divided. Resolution of the question necessitates construction of two constitutional provisions which appear to conflict with each other.

Const 1963, art 5, § 25 provides, in relevant part:

"The lieutenant governor shall be president of the senate, but shall have no vote, unless they be equally divided."

The third sentence of Const 1963, art 4, § 26, appears to conflict with Const 1963, art 5, § 25, by stating:

"No bill shall become a law without the concurrence of a majority of the members elected to and serving in each house."

In an effort to harmonize these provisions, four basic rules of constitutional construction will be applied.

### A

The primary rule of construction is the rule of "common understanding". *Traverse City School Dist v Attorney General,* 384 Mich 390; 185 NW2d 9 (1971). In ascertaining the meaning of words in a constitution, a court should give effect to the plain meaning of such words as understood by the people who adopted it. *Bond v Ann Arbor School Dist,* 383 Mich 693; 178 NW2d 484 (1970); *Michigan Farm Bureau v Secretary of State,* 379 Mich 387; 151 NW2d 797 (1967).

Construed for its plain meaning, Const 1963, art 5, § 25, clearly provides that the Lieutenant Governor may vote if the Senate is "equally divided". As stated by the Court over one hundred years ago, "The cardinal rule of construction, concerning language, is to apply to it that meaning which it would naturally convey to the popular mind". *People v Dean,* 14 Mich 406, 417 (1866). Certainly, the Michigan electorate in ratifying the 1963 Constitution, ascribed to the word "vote" the plain meaning of casting an effective vote.

Opponents of 1978 PA 426 argue that the language of art 4, § 26 limits the tie-breaking power of the Lieutenant Governor to votes involving procedural matters and legislation at stages preceding final passage. We decline to adopt this construction, since to do so would effectively strip art 5, § 25 of its significance and its plain meaning. It would be incongruous to give the Lieutenant Governor a tie-breaking vote in preliminary stages and at the same time to deny that vote at the final consideration of the same legislation. No more of an apparent and frustrating deadlock could exist than that which would occur on the final passage of a bill. If the drafters of the Constitution had intended such result, they most assuredly could have modified the language of art 5, § 25 to limit the Lieutenant Governor's tie-breaking power to those situations.

## B

When there is conflict between general and specific provisions in a constitution, the specific provision must control. This second rule of construction is grounded on the premise that a specific provision must prevail with respect to its subject matter, since it is regarded as a limitation

on the general provision's grant of authority. The general provision is therefore left controlling in all cases where the specific provision does not apply. *McDonald v Schnipke,* 380 Mich 14, 20; 155 NW2d 169 (1968); *Hart v Wayne County,* 396 Mich 259, 273; 240 NW2d 697 (1976).

In the instant case, art 4, § 26 is the general provision and art 5, § 25 is the specific provision. Thus, the language of art 4, § 26 that "[n]o bill shall become a law without the concurrence of a majority of the members elected to and serving in each house" applies to every bill considered for final passage by the House of Representatives and to every bill considered for final passage by the Senate, except those rare situations[2] where the Senate vote is "equally divided". In those instances, the specific language of art 5, § 25 controls and thus renders inapplicable the general language of art 4, § 26.

## C

The third rule of construction was set forth by the Court in *Kearney v Board of State Auditors,* 189 Mich 666, 673; 155 NW 510 (1915):

"In construing constitutional provisions where the meaning may be questioned, the court should have regard to the circumstances leading to their adoption and the purpose sought to be accomplished."

To ascertain the circumstances surrounding the adoption of a constitutional provision and the

---

[2] We use the word rare not only because the constitutional convention delegates used it to describe the anticipated use of the new power being granted by art 5, § 25, but also because during the 15-year history of the present constitution, the Lieutenant Governor has voted on fewer than 20 occasions, and on only one occasion, in the instant case, on the final passage of legislation.

purpose sought to be accomplished by the provision, the "Address to the People" and the convention debates may be consulted. *Regents of the University of Michigan v Michigan,* 395 Mich 52; 235 NW2d 1 (1975); *Burdick v Secretary of State,* 373 Mich 578; 130 NW2d 380 (1964).

The two provisions relevant to the instant case were never debated together at the convention. However, the Convention Comment to art 5, § 25, which was a part of the "Address to the People", illustrates the delegates' intent to significantly alter the 1908 Constitution[3] by providing the Lieutenant Governor with a tie-breaking vote:

"This is a revision of Sec. 19, Article VI, of the present [1908] constitution. *A significant change is the provision that the lieutenant governor, in his capacity as president of the senate, may vote in case of equal division.*" (Emphasis added.) 2 Official Record, Constitutional Convention 1961, Address to the People, p 3382.

Furthermore, the delegates' comments indicate that in recommending to the electorate that a tie-breaking vote be given to the Lieutenant Governor, the framers had taken into consideration the size of the Senate and the constitutional mandate of an even number of senators.[4]

Convention Delegate Hutchinson, after reflecting on his own experience in the State Senate, commented:

"I don't think that it would be good policy to let the

---

[3] The 1908 Constitution specifically prohibited the Lieutenant Governor from voting:

"The lieutenant governor shall be president of the senate, but shall have no vote." Const 1908, art 6, § 19.

[4] The Constitutions of 1850, 1908 and 1963 mandate an even number of senators; 32, 34 and 38 respectively. Const 1850, art 4, § 2; Const 1908, art 5, § 2; Const 1963, art 4, § 2.

lieutenant governor be a senator at large to make law that which has not been able to win a majority of the senators elect, except in that extreme situation where they are equally divided. And there would no be need of giving the lieutenant governor any power at all to break a tie vote if we had a constitutionally odd numbered senate so there would always be a number of senators not evenly divisible by 2 making up the body. Since our history is that we have even numbered senates, it is only sensible to let the lieutenant governor break a tie." 2 Official Record, Constitutional Convention 1961, Committee Proposal 71 (Const 1963, art 5, § 25), p 1825.

The chairperson of the committee which proposed reinserting the Lieutenant Governor's right to vote stated the following rationale:

"[T]he committee envisioned that this would be a relatively rare situation which would arise, and that it is generally an unfortunate thing from the standpoint of the people watching the legislative process to find the legislature deadlocked on an issue by an absolutely even vote, and that it is desirable from the standpoint of having the people feel that the legislative process does and can move forward at all times to have it possible for a tie vote to be broken. I think this is the rationale of the committee proposal." 2 Official Record, Constitutional Convention 1961, Committee Proposal 71 (Const 1963, art 5, § 25), pp 1825-1826.

Another delegate had this to add:

"I would just like to point out * * * that this committee proposal would exactly parallel the situation in the United States senate in Washington where the vice president presides over the United States senate and does have the right to vote, which he has exercised in the past, in case of a tie vote, and then only." 2 Official Record, Constitutional Convention 1961, Committee Proposal 71 (Const 1963, art 5, § 25), p 1826.

The foregoing excerpts from the official record make it clear that the framers intended the Lieutenant Governor cast a tie-breaking vote in all deadlock situations, thereby permitting the legislative process to move forward.

## D

The final rule of construction which we apply today provides that if conflicting constitutional provisions cannot be harmonized, the provision adopted later in time controls. 16 CJS, Constitutional Law, § 26, p 99; 16 Am Jur 2d, Constitutional Law, § 69, p 247. See also *Kunzig v Liquor Control Commission,* 327 Mich 474; 42 NW2d 247 (1950).

As discussed *infra,* we believe that these provisions can be harmonized, without reading into art 5, § 25 the restrictive interpretation of in "procedural matters and legislation at stages preceding final passage". However, were we to perceive irreconcilable conflict, under this rule of construction, art 5, § 25 would control since it was adopted at a later point in time.

As noted earlier, the 1908 Constitution prohibited the Lieutenant Governor from having any vote in the Senate. Const 1908, art 6, § 19. That constitution did contain, however, a virtually identical provision to that of Const 1963, art 4, § 26:

"No bill shall become a law without the concurrence of a majority of all members elected to each house." Const 1908, art 5, § 23.[5]

---

[5] The only change in the revised provision of Const 1963, art 4, § 26 is the addition of the words "and serving". These two words were added to clarify the method of computing a majority as provided in Const 1963, art 4, § 14. See 2 Official Record, Constitutional Convention 1961, Address to the People, p 3374.

Our review of the constitutional history, the convention debates and the "Address to the People" relating to art 4, § 26 fails to provide evidence that this article was intended as a limitation on the Lieutenant Governor's power to cast a tie-breaking vote in the Senate. Since art 5, § 25 represented a significant change from the 1908 Constitution, while art 4, § 26 remained virtually identical to its 1908 counterpart, in a conflict between the two provisions art 5, § 25 must control.

### III

Great reliance is placed upon the Court's decision in *Kelley v Secretary of State,* 149 Mich 343; 112 NW 978 (1907), in attacking the validity of the Lieutenant Governor's power to cast a tie-breaking vote upon final passage of a bill. Therefore, this Court is faced with the question of whether the 1907 *Kelley* opinion remains viable and is controlling.

We believe that *Kelley* can be significantly distinguished from the instant case. The Court in *Kelley* interpreted Const 1850, art 5, § 14, a provision that differs substantially from the current provision embodied in Const 1963, art 5, § 25. Const 1850, art 5, § 14 provided that:

"The Lieutenant Governor shall, by virtue of his office, be President of the Senate. In committee of the whole he may debate all questions; and when there is an equal division, he shall give the casting vote."

The punctuation of this 1850 provision reveals that the Lieutenant Governor's power to vote was limited to situations where the Senate was acting in committee of the whole. A legislative body

while sitting as a committee of the whole cannot consider bills or resolutions for final passage. Thus, under the 1850 constitutional provision the Lieutenant Governor's voting power was limited to breaking ties in the Senate committee of the whole.

Following the *Kelley* decision, a new constitution was ratified. Under that intervening Constitution of 1908, the Lieutenant Governor was not allowed to vote in the Senate under any circumstances. Const 1908, art 6, § 19.

Therefore, at the 1961 Constitutional Convention the delegates had the option of following the 1908 Constitution and denying the Lieutenant Governor any vote, or of reinstating the language of the 1850 constitutional provision and providing a tie-breaking vote in the committee of the whole. Neither option was selected. Instead, the delegates chose to reinstate the Lieutenant Governor's tie-breaking vote and to eliminate the 1850 provision's restrictive language of "committee of the whole". We are of the opinion that by eliminating any reference to "committee of the whole" in Const 1963, art 5, § 25, the delegates removed any suggestion that the Lieutenant Governor's voting power is limited to a particular stage of the proceedings.

Furthermore, the *Kelley* decision has been severely criticized by another court. See *State ex rel Easbey v Highway Patrol Board,* 140 Mont 383; 372 P2d 930 (1962).

Despite the apparent factual similarity to the *Kelley* case, the constitutional provisions at issue in the instant case are so materially different from those sections construed in *Kelley* that we find *Kelley* totally lacking in precedential value.

We are of the opinion that Lieutenant Governor

Damman's action in casting the affirmative tie-breaking vote on House Bill 4407 was constitutionally proper. To the extent that this Court's decision in *Kelley, supra,* could be construed to the contrary, it is overruled. No costs, a public question.

WILLIAMS, LEVIN, COLEMAN, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.

FITZGERALD, J. *(dissenting).* The Court has been requested by the Governor to provide an advisory opinion in regard to the validity of the enactment of 1978 PA 426, enrolled House Bill 4407. We have agreed to render an opinion advising on the following questions:

1) May the Lieutenant Governor, pursuant to Const 1963, art 5, § 25, cast an affirmative vote during the final consideration of a bill when the Senate is equally divided 19 to 19? and

2) Would such action satisfy constitutional requirements with respect to the effectiveness of the passage of the bill by the Senate?

Today, the majority of the Court answers these questions in the affirmative. We respectfully dissent.

Upon consideration of House Bill 4407 on final passage, the Michigan Senate became equally divided, with 19 senators voting "aye" and 19 senators voting "nay". The Lieutenant Governor cast the tie-breaking "aye" vote pursuant to Const 1963, art 5, § 25, and the bill was enrolled and subsequently signed by the Governor on September 30, 1978.

The question before this Court is whether the Lieutenant Governor's casting vote under the provisions of Const 1963, art 5, § 25 may be counted for the final passage of a bill by the Senate in view

of the provision of Const 1963, art 4, § 26, which requires for the final passage of a bill an affirmative vote by a majority of members elected to and serving in each house.

The composition of the Senate is set forth in Const 1963, art 4, § 2:

"The senate shall consist of 38 members to be elected from single member districts at the same election as the governor for four-year terms concurrent with the term of office of the governor."

The requirements for the final passage of bills by the Legislature during regular session are set forth in Const 1963, art 4, § 26, which provides, in pertinent part, as follows:

"No bill shall become a law without the concurrence of a majority of the members elected to and serving in each house."

Const 1963, art 5, § 25 provides, in pertinent part, as follows:

"The lieutenant governor shall be president of the senate, but shall have no vote, unless they be equally divided."

In an effort to harmonize the conflict between Const 1963, art 4, § 26 and Const 1963, art 5, § 25, the majority with the assistance of a number of rules of constitutional construction, has found:

"[T]he language of art 4, § 26 that '[n]o bill shall become a law without the concurrence of a majority of the members elected to and serving in each house' applies to every bill considered for final passage by the House of Representatives and to every bill considered

for final passage by the Senate, except those rare situations where the Senate vote is 'equally divided'. In those instances, the specific language of art 5, § 25 controls and thus renders inapplicable the general language of art 4, § 26."

In effect, the majority has held that the clear language contained in Const 1963, art 4, § 26, that "[n]o bill shall become law without the concurrence of a majority of the members elected to and serving in each house" must be construed so as to read: *"some* bills may become law without the concurrence of a majority of the members elected to and serving in each house". We do not find such a strained construction supportable by prior decisions of this Court or by the rules of constitutional construction employed by the majority.

In *Kelley v Secretary of State,* 149 Mich 343; 112 NW 978 (1907), this Court was called upon to resolve a conflict between the comparable provisions of the 1850 Constitution. In *Kelley,* the Senate became equally divided on the adoption of a concurrent resolution directing the Secretary of State to submit to the vote of the people a proposition calling for a direct primary election of the candidates for the offices of United States Senator, Governor and Lieutenant Governor. With an even split of 16 yeas and 16 nays in the Senate, the Lieutenant Governor cast the deciding vote, and the resolution was adopted. The resolution was subsequently approved by the Governor. When the Secretary of State refused to certify the question for a vote of the people as required by the resolution, the Lieutenant Governor sought mandamus.

In determining whether the Lieutenant Governor had the casting vote on the adoption of the concurrent resolution, this Court turned to Const 1850, art 4, § 19, which provided as follows:

"No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house."

The Court in *Kelley* first held that it was unimportant that the resolution was labeled a concurrent resolution since the resolution had the effect of a law within the meaning of the constitutional provision. The Court then reasoned that since the concurrent resolution was a bill or joint resolution within the meaning of Const 1850, art 4, § 19, it necessarily followed that the resolution could not be passed without the "concurrence of a majority of all the members elected to each house".

The Court in *Kelley* next decided the question of whether the Lieutenant Governor could give the casting vote when the Senate was evenly divided on the final passage of a bill or joint resolution. Const 1850, art 5, § 14 provided as follows:

"The Lieutenant Governor shall, by virtue of his office, be President of the Senate. In committee of the whole he may debate all questions; and when there is an equal division, he shall give the casting vote."

In harmonizing the conflicting provisions of Const 1850, art 4, § 19 and Const 1850, art 5, § 14, this Court in *Kelley* held that the Lieutenant Governor could not provide the deciding vote where the Senate was evenly divided on a measure which would have the effect of law.

Today, the majority of the Court seeks to distinguish *Kelley* from the instant case on the basis that under the language of Const 1850, art 5, § 14, the Lieutenant Governor's power to give the casting vote is arguably limited to proceedings of the committee of the whole. This is indeed a plausible construction of Const 1850, art 5, § 14, and in fact

it is the construction advanced in 1907 by the Attorney General in *Kelley.* However, upon examining the rationale upon which this Court reached its decision in *Kelley,* it becomes apparent that the basis upon which the majority distinguished *Kelley* from the instant case is one without solid foundation. The Court in *Kelley* specifically declined to base its decision on the construction of Const 1850, art 5, § 14 advanced by the majority today and, instead, relied on the clear and absolute language of Const 1850, art 4, § 19 that:

"No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house."

While the casting vote provision of Const 1850, art 5, § 14 was deleted in the 1908 Constitution, it was reinstated by the framers of the 1963 Constitution in the form of Const 1963, art 5, § 25. Since the effective date of the 1963 Constitution, the Lieutenant Governor has cast the deciding vote on a number of occasions when the Senate was equally divided on a variety of procedural issues.[1] However, with the passage and subsequent enactment of House Bill 4407, this Court is presented for the first time with the question whether the Lieutenant Governor may cast the deciding vote for the final passage of a bill when the Senate is equally divided. We would hold that this Court is

---

[1] See 2 Michigan Senate J (1965) 1702; 2 Michigan Senate J (1965) 1759; 1 Michigan Senate J (1966) 213; 1 Michigan Senate J (1966) 217; 1 Michigan Senate J (1966) 896; 2 Michigan Senate J (1966) 1246; 1 Michigan Senate J (1971) 81; 2 Michigan Senate J (1971) 2482; 1 Michigan Senate J (1972) 369-370; 2 Michigan Senate J (1972) 1103-1104; 2 Michigan Senate J (1972) 1105; 2 Michigan Senate J (1972) 1115-1116; 2 Michigan Senate J (1972) 1460; 1 Michigan Senate J (1973) 300; 1 Michigan Senate J (1974) 57; and 1 Michigan Senate J (1974) 84.

bound by its decision in *Kelley*[2] that the casting vote provision of the 1850 Constitution cannot apply to the final passage of a bill in view of the constitutional provision requiring the concurrence of a majority of the elected members of each house.

In *Boards of County Road Commissioners v Board of State Canvassers,* 391 Mich 666; 218 NW2d 144 (1974), this Court reiterated the following principle of constitutional adjudication:

" 'Where a constitutional provision has received a settled judicial construction, and is afterward incorporated into a new or revised constitution, or amendment, it will be presumed to have been retained with a knowledge of the previous construction, and courts will feel bound to adhere to it.' " *Richardson v Secretary of State,* 381 Mich 304, 311; 160 NW2d 883 (1968).[3]

Accordingly, we would hold that the rule enunciated in *Kelley* is controlling in the present case. Had the framers of the 1963 Constitution deemed it prudent to qualify the language of Const 1963, art 4, § 26, to allow the Lieutenant Governor to cast the deciding vote on the final passage of a bill when the Senate is equally divided, we must presume they would have done so with clear language to that effect. Therefore, we believe that the provision of Const 1963, art 5, § 25, setting forth the Lieutenant Governor's power to cast the deciding vote when the Senate is equally divided, should be construed to be limited to procedural matters only in view of the absolute language of Const 1963, art 4, § 26 requiring for the final passage of a bill an

[2] We would note that we do not believe that the precedential value of *Kelley* has been diminished by the disapproval of it expressed by the Montana Supreme Court in *State ex rel Easbey v Highway Patrol Board,* 140 Mont 383; 372 P2d 930 (1962).

[3] Quoting 16 CJS, Constitutional Law, § 35, pp 114-115.

affirmative vote by a majority of members elected to and serving in each house.

We would answer the question before this Court in the negative.

KAVANAGH, C.J., concurred with FITZGERALD, J.