W. Todd **AKIN**, et al., Appellants,

v.

**DIRECTOR OF REVENUE**, Respondent.

No. 78647.

Supreme Court of Missouri,
En Banc.

Nov. 19, 1996.

Rehearing Denied Dec. 17, 1996.

---

Simon B. Buckner, Jefferson City, for Appellants.

Jeremiah W. (Jay) Nixon, Attorney General, John R. Munich, Deputy Attorney General, Robert Presson, Assistant Attorney General, Jefferson City, for Respondent.

HOLSTEIN, Chief Justice.

Appellants, as taxpayers, filed a declaratory judgment and action for injunction claiming that Senate Bill 380, Laws of 1993, p. 545, et seq. (SB 380), was unconstitutional. The appellants claimed the enactment was unconstitutional because it had a referendum clause that did not apply to the whole bill, because a referendum may not be contingent on a future event, because the bill contained more than one subject, and because the bill changed subjects during the legislative process. Due to its unconstitutionality, appellants assert that the taxes imposed pursuant to SB 380 are unlawful. The trial court concluded that all provisions of SB 380 were constitutional and denied injunctive relief. Because the issues raised involve the constitutionality of a statute, this Court has jurisdiction. *Mo. Const. art. V, § 3.* The judgment is affirmed in part and reversed in part.

## I.

SB 380 contains four parts, designated as sections A through D. Section A includes twenty new sections. The twenty new sections are referred to as the "Outstanding Schools Act." Sandwiched between new §§ 10 and 11 is the reenactment of thirty-eight statutory sections that were repealed. Among the repealed and reenacted sections is § 163.031, the school "Foundation Formula." Also among the sections repealed and reenacted are §§ 143.071 and 143.171. The reenacted § 143.071 increased corporate tax rates to 6¼ % for tax years commencing on or after September 1, 1993. Formerly, the corporate tax rate was 5%. § 143.071, RSMo 1986. The new § 143.171 limited the Missouri income tax deduction allowed for federal income taxes paid to $5,000 on single individual returns and $10,000 on combined returns. Under the same section, corporations were limited to a fifty percent deduction of federal income taxes from Missouri sources. Formerly, both individuals and corporations had been entitled to take the full deduction for all federal taxes paid on Missouri income. § 143.171, RSMo Supp.1993.

Sections B, C and D of SB 380 provide as follows:

Section B. Chapter 143, RSMo, is amended by adding thereto two new sections to be known as section 1 and 2, to read as follows:

Section 1. Notwithstanding the provisions of sections 143.071, to the contrary, a tax is hereby imposed upon Missouri taxable income of corporations in an amount equal to 5 percent of Missouri taxable income.

Section 2. 1. Notwithstanding the provisions of section 143.171, to the contrary, a taxpayer shall be allowed a deduction for his federal income tax liability under chapter 1 of the Internal Revenue Code for the same taxable year for which the Missouri return is being filed after reduction for all credits thereon, except the credit for payments of federal estimated tax, the credit for the overpayment of any federal tax, and the credits allowed by the Internal Revenue Code by section 31 (tax withheld on wages), section 27 (tax of foreign country and United States possessions), and section 34 (tax on certain uses of gasoline, special fuels, and lubricating oils).

2. If a federal income tax liability for a year prior to the applicability of sections 143.011 to 143.996 for which he was not previously entitled to a Missouri deduction is later paid or accrued, he may deduct the federal tax in the later year to the extent it would have been deductible if paid or accrued in the prior year.

Section C—contingency. Section B of this act shall become effective only if the question prescribed in Section D of this act is submitted to a statewide vote and a majority of the qualified voters voting on the issue approve such question, and not otherwise.

Section D. In the event the Supreme Court of Missouri does not affirm in whole or in part the decision in the case of *COMMITTEE FOR EDUCATION EQUALITY, ET AL. v. STATE OF MISSOURI, ET AL.,* No. CV190–1371CC, and *LEE'S SUMMIT SCHOOL DIST. R–VII, ET AL. V. STATE OF MISSOURI, ET AL.,* No. CV190–510CC, a statewide election shall be held on the first regularly scheduled statewide election date after such a ruling

at which an election can be held pursuant to Chapter 115, RSMo. At such election the qualified voters of this state shall vote on the question of whether the taxes prescribed in section B of this act shall be applied to all taxable years beginning on or after the date of such election and not otherwise. If the voters approve such questions, sections 1 to 20 of section A of this act shall expire thirty days after certification of the results of the election.

The circuit court cases referred to in section D were consolidated and pending an appeal to this Court when SB 380 was enacted. In those cases, the trial judge had declared former § 163.031, RSMo 1986, unconstitutional and declared that the amount appropriated for education in Missouri was inadequate. *Committee for Educational Equality v. State,* 878 S.W.2d 446, 448–49 (Mo. banc 1994). However, the trial court's judgment did not identify how such deficiencies might be corrected or what relief he would grant against the parties claiming to be aggrieved on appeal. Rather, he withheld the effective date of his judgment pending the close of the 1993 legislative session and retained jurisdiction to grant other remedies in the future. Thereafter, SB 380 was enacted and signed into law by the governor.

Subsequently, the appeals of *Committee* and *Lee's Summit* reached this Court. After noting a number of problems with the judgment, not the least of which was the repeal of the only statute found to be unconstitutional, this Court concluded that the judgment failed to dispose of any discrete claim as to any party, as required by Rule 74.01(b). The appeal was dismissed. 878 S.W.2d at 453. For reasons unknown, those cases continue to languish in the Circuit Court of Cole County.

Pursuant to the enhanced taxes provided for in section A of SB 380, the director of revenue commenced collecting taxes. The taxpayer-appellants brought this action to have SB 380 declared unconstitutional and to enjoin the collection of the taxes. The trial court found that SB 380 was constitutional and denied any injunctive relief.

## II.

■ A preliminary question is whether this case is "ripe" for determination. To grant a declaratory judgment, the court must have before it a justiciable controversy. *Farm Bureau Town & Country Ins. v. Angoff,* 909 S.W.2d 348, 352 (Mo. banc 1995). The petition must present a "real, substantial, presently existing controversy admitting of specific relief as distinguished from an advisory or hypothetical situation." *City of Jackson v. Heritage Savings & Loan Assn.,* 639 S.W.2d 142, 144 (Mo.App.1982). A mere difference of opinion or disagreement on a legal question is insufficient, but parties must show that their rights and liabilities are affected. *Tietjens v. City of St. Louis,* 359 Mo. 439, 222 S.W.2d 70, 71–72 (1949).

■ Here there is no speculation that appellant-taxpayers are or will be immediately adversely affected by the collection of enhanced income tax revenues under section A of SB 380. Under that law, they are presently subject to either higher rates or reduced deductions for income taxes. If, as plaintiffs claim, SB 380 is unconstitutional, taxpayers who are subject to a present tax under that law have a real, sufficient, immediate, substantial right at stake that permits a declaratory judgment action. *City of Crestwood v. Lohman,* 895 S.W.2d 22, 30 (Mo.App.1994). When a taxpayer brings a declaratory judgment action challenging the constitutionality of a statute under which the taxpayer is being required to pay taxes, the case is ripe for adjudication. Thus, all challenges to the constitutionality of SB 380 are ripe.

## III.

A separate question is whether the referendum provisions of sections B, C and D are severable from section A. The statutes are not silent on the question of severability.

The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably con-

nected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

§ 1.140, RSMo 1994.

### A.

■ Preliminary to determining the need to sever one provision from another is whether one of the provisions in the statute is unconstitutional. Here, one constitutional challenge found in appellants' brief is the claim that the General Assembly may not enact the contingent referendum provided for in sections B, C, and D of SB 380. Our constitution in article III, § 1, invests the General Assembly with broad, plenary, legislative powers, and legislative enactments carry a strong presumption of constitutionality. *American United v. Rogers,* 538 S.W.2d 711, 716 (Mo. banc), *cert. denied,* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976); *Preisler v. Doherty,* 365 Mo. 460, 284 S.W.2d 427, 431–32 (1955). But the power to delegate the legislative power by means of a contingent referendum has never been addressed in this state.

■ As noted by respondent in her brief, contingent laws are not all unconstitutional. There are two long-standing, but competing rules on the subject. The first is that the power of the General Assembly to make laws may not be delegated. *City of Springfield v. Clouse,* 356 Mo. 1239, 206 S.W.2d 539, 543 (1947). The second rule is that the legislature may enact laws to take effect on the happening of a future event, including a vote of the people. *State ex rel. Maggard v. Pond,* 93 Mo. 606, 6 S.W. 469, 472 (1887). Resolving the tension between the two competing principles requires some examination of the cases relied on by respondent.

In *Maggard,* the statute under consideration was a law permitting a local option election on whether to license "dram shops," that is, establishments where liquor in quantities less than one gallon may be sold. The local option election was held not to be an improper contingency. Another case relied on by respondent, upholding a law against a claim that it was contingent, was *Poindexter v. Pettis County,* 295 Mo. 629, 246 S.W. 38 (1922). There, the statute that was upheld gave the county court the option to appoint a superintendent of public welfare and thereby abolish the office of probation officer.

■ One critical factor distinguishing *Maggard* and *Poindexter* from this case is that here the legislature is delegating the adoption of a law of general application to a vote of the people, not merely a law which provides a local option to a political subdivision as to how the subdivision would carry out its functions. The true distinction is between a delegation of a power to make law, which involves a discretion as to what the general law will be, and conferring an authority or discretion as to how the law shall be executed. *State ex rel. Orr v. Kearns,* 304 Mo. 685, 264 S.W. 775, 781 (1924); 16 C.J.S. *Constitutional Law* § 137 (1984). A delegation of the power to enact or repeal a general tax for education, as is provided in sections B, C and D of SB 380 falls into the former category and is void in the absence of constitutional authorization. *See Clouse,* 206 S.W.2d at 545.

■ Referendum is a constitutionally authorized method for the general assembly to delegate its legislative authority. But as respondent correctly argues, SB 380 is not a referendum, in the constitutional sense. The constitution provides that a bill referred to the people shall not be subject to veto by the governor. *Mo. Const. art. III, § 52(b).* But SB 380 was sent to the governor for veto or approval. Article III, § 52(a), authorizes reference of a bill to a veto or approval by the people and requires that once a bill is referred, it must be submitted to voters at a general election or special election provided for in the bill. But no part of SB 380 will be submitted to voters as a bill; it is a *statute.* Moreover, it contains no provision setting a special election, and more than one general election has come and gone since the legislature passed SB 380. Article III, § 52(a) also excepts from referendum "laws for appropri-

ation of funds ... for the support of public schools." But sections B, C, and D arguably would submit a law appropriating funds for support of public schools to referendum. Finally, the contingency clause may be read to directly involve the judiciary in the referendum and legislative process, in contravention of article II, § 1, of the state constitution. In sum, the contingent referendum provisions of sections B, C and D are no more than a poor imitation of a constitutionally authorized referendum. The legislature has the authority to refer a bill to the people, but only in the manner provided by the constitution. *Bohrer v. Toberman,* 360 Mo. 244, 227 S.W.2d 719, 722 (1950). Because the contingent referendum provisions are not consistent with a constitutionally authorized referendum, they are a void attempt to delegate legislative authority.

## B.

■ Now we turn to whether the unconstitutional provisions of sections B, C and D are severable from section A. Two cases of this Court demonstrate how the severability statute is to be applied. The most recent case is *Associated Industries of Mo. v. Director of Revenue,* 918 S.W.2d 780 (Mo. banc 1996). On review by the United States Supreme Court, it was held that § 144.748, RSMo 1994, imposing a statewide 1.5% use tax as a counterpart to widely varying local sales taxes, violated the Interstate Commerce Clause by applying a use tax in excess of a sales tax in some localities. *Associated Industries of Mo. v. Lohman,* 511 U.S. 641, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994). On remand, this Court was called on to decide whether § 144.748 was severable. 918 S.W.2d at 781.

■ The legislative history indicated that a prior law, § 144.747, RSMo Supp.1990, had given counties and municipalities the option of levying a local use tax equal to their local sales tax. However, that statute had never been implemented. Instead, it was repealed and replaced by § 144.748, establishing the uniform statewide local use tax. Based on that legislative history, this Court concluded that the legislature intended to reject "a patchwork tax scheme in which some jurisdictions have a use tax and some do not."

918 S.W.2d at 785. To do what was requested in *Associated Industries,* this Court would have had to remove the words "in the amount of one and one-half percent" from § 144.748 and add the words "in an amount equal to that levied by the political subdivision where the use tax is collected." The statutory doctrine of severability permits one offending provision of a law to be stricken and the remainder to survive. It has never allowed courts to insert words in a statute which were not placed there by the General Assembly. It cannot be reasonably presumed that the General Assembly intended that if the words "one and one-half percent" were deleted from § 144.748, leaving a meaningless sentence, the statute would have some effect. Section 144.748 was held not to be severable. *Id.*

■ *Associated Industries* must be contrasted with another case on the subject of severability. In *Simpson v. Kilcher,* 749 S.W.2d 386 (Mo. banc 1988), a statute having three subsections was before the Court, § 537.053, RSMo1994. The first two subsections of the statute immunized sellers of liquor from liability for injuries caused by their patrons. The third subsection imposed liability against a liquor licensee convicted of selling liquor to an obviously intoxicated person or a person under the age of 21 if the sale of intoxicants was the proximate cause of the injury. *Id.* at 388–89. The Court held that even if subsection 3 of the statute were unconstitutional, subsections 1 and 2 were complete, constitutional, legislative enactments prohibiting dram shop liability. 749 S.W.2d at 393. No words needed to be inserted into any subsection or provision of the statute to give the remaining subsections complete meaning, as was the case in *Associated Industries.* The *Simpson* Court noted that "The test of the right to uphold a law, some portions of which may be invalid, is whether or not in so doing, after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the legislature would have enacted if it had known that the excinded portions were invalid." *Id.* Moreover, under the statutory standard noted previously, the legislature is presumed to

have intended this Court to give effect to the parts of the statute which are not invalidated. The statute was deemed severable. Because the statutory provisions were severable, the constitutionality of the offending subsection was not addressed. *Id.*

Section A contains no referendum clause, contingent or otherwise. It is complete and capable of enforcement without reference to sections B, C and D. Upon being signed into law by the governor, the General Assembly unquestionably intended section A to be followed as law, at least until such time as the repeal of the new taxes under the circumstances described in sections B, C and D came to pass.

Thorny constitutional questions are precipitated by the unusual referendum provision involved here. The legislature was undoubtedly aware of the constitutional problems lurking in the contingent referendum provisions. Members of the General Assembly are presumed to be familiar both with the constitutional provisions cited in Part B, above, and with their own severability statute when enacting SB 380. *ARO Systems, Inc. v. Supervisor of Liquor Control,* 684 S.W.2d 504, 508 (Mo.App.1984); *Barnhart v. McNeill, Jr.,* 775 S.W.2d 259, 260 (Mo.App. 1989). One method the legislature uses to signal its intent as to what provisions are severable is to segregate a bill into separate sections, as was done here. By clearly segregating the provisions of section A from the troublesome sections involving referendum, the General Assembly signaled an intent that section A be treated as severable from the latter provisions should constitutional questions as to the referendum arise.

Arguably, there are those legislators who may have voted against adopting SB 380 had it not been for the provisions found in sections B, C and D. In addition, there is an interplay between section A and sections B, C and D. The same is true of all subsections of § 537.053, at issue in *Simpson,* where some legislators may not have voted in favor of subsections 1 and 2 had they understood that subsection 3 was unconstitutional. However, § 1.140 requires courts to *presume* severability of the valid provisions unless the valid provision is essentially and inseparably connected with and dependent upon an invalid provision. It cannot be said that section A is "so essentially and inseparably connected with, *and* so dependent upon" sections B, C and D that it *cannot* be presumed that the legislature would not have enacted section A without sections B, C and D. Section A is severable from sections B, C and D.

Because section A is severable from sections B, C and D, and points I and II of appellants' argument relate only to the constitutionality of the referendum provisions found in sections B, C and D, points I and II will not be addressed further. *See State ex rel. Highway Comm'n v. Thompson,* 323 Mo. 742, 19 S.W.2d 642, 645 (1929).

### IV.

██ Missouri Constitution, article III, § 23, provides: "No bill shall contain more than one subject which shall be clearly expressed in its title, except [certain bills relating to bond issues] and general appropriation bills, which may embrace the various subject and accounts for which moneys are appropriated." That specific section was under consideration in the case of *Hammerschmidt v. Boone County,* 877 S.W.2d 98 (Mo. Banc 1994). In that case, the Court said,

Attacks against legislative action founded on constitutionally imposed procedural limitations are not favored; we ascribe to the General Assembly the same good and praiseworthy motivations as inform our decision-making processes. Therefore, this Court interprets procedural limitations liberally and will uphold the constitutionality of a statute against such an attack unless the act clearly and undoubtedly violates the constitutional limitation.

877 S.W.2d at 102. The dispositive question in determining whether a bill contains more than one subject is "whether all provisions of the bill fairly relate to the same subject, have a natural connection therewith, or are incidents or means to accomplish its purpose." *Id.*

Given this most liberal standard for reviewing the challenged provisions of SB 380, does it contain more than one subject? The subject in the heading of the bill is "edu-

cation." Appellants' pleadings allege that the bill contains both a tax increase and relates to education matters. If the tax was designed just to raise general revenue, one might agree. However, section A has a specific provision regarding the use of the tax: "The commissioner of administration shall estimate and furnish to the state treasurer the appropriate net increase in the amount of state tax revenues collected ... from the following: the additional one and one-fourth percent tax on Missouri taxable income collected under subsection 2 of section 143.071, RSMo; and the reduction of the federal income tax deduction pursuant to subsections 2 and 3 of section 143.171, RSMo ... The treasurer shall transfer monthly from general revenue an amount equal to the estimate to the outstanding schools trust fund established in subsection 2 of section 1 of this act." *Section A, § 1, SB 380.*

To paraphrase what is said in the statute, the tax increases are a means of funding the education programs provided for elsewhere in section A. The tax increases are simply the "means to accomplish its purpose." *See Hammerschmidt,* 877 S.W.2d at 103. Giving the measure the liberal reading required to sustain its constitutionality under the single subject provision of article III, § 23, SB 380 contains only one subject, education, which is set forth in the title of the bill.

## V.

 Appellants' final objection is to a perceived change in the purpose of SB 380 during the legislative process because, they claim, a bill relating to education became a bill relating to state finances. One limitation on the General Assembly is that "no bill shall be so amended in its passage through either house as to change its original purpose." *Mo. Const. art. III, § 21.* The purpose of the above constitutional limitation is "designed to prevent the enactment of amendatory statutes in terms so blind that legislators themselves ... [would be] ... deceived in regard to their effects, and the public, from difficulty in making the necessary examination and comparison, [would fail] to become apprised of the changes made in the laws." *State v. Ludwig,* 322 S.W.2d 841, 847 (Mo.1959). "Purpose" is the key word in the provision, and it means the general purpose of the bill, not the mere details through which and by which the purpose is manifested and effectuated. *Brown–Forman Distillers Corp. v. McHenry,* 566 S.W.2d 194, 196 (Mo. banc 1978). The restriction is against the introduction of matters not germane to the object of the legislation or unrelated to its original subject.

An example of a case where this provision was violated is *Allied Mut. Ins. Co. v. Bell,* 353 Mo. 891, 185 S.W.2d 4 (1945). There a bill was introduced having as its original purpose a reduction in certain insurance premiums. However, during legislative process, it was amended so as to impose a tax on insurance premiums. The court found this to be a clear deviation from the bill's original purpose, declaring it unconstitutional. *Id.* at 8.

More recently, in *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31 (Mo. banc 1982), *appeal dismissed,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983), this Court considered a challenge to a bill under the "original purpose" limitation of article III, § 21. As originally filed, the bill had a title describing it as a bill "relating to interest" but as finally passed, the title was amended to be a bill "relating to certain credit transactions." There the Court noted that the ballot title is not a part of the bill and that the bill's original purpose which it retained throughout the legislative process remained the same, that is, credit transactions. Thus, no violation of article III, § 21, had occurred. *Id.* at 38.

In this case, the purpose of SB 380 was consistent throughout, that purpose being a bill relating to education. The fact that it contained provisions relating to taxation for educational purposes does not run afoul of the prohibitions found in article III, § 21. No one, particularly a member of the General Assembly, could claim to have been misled or confused that the bill's purpose and each provision of the bill related to education. SB 380 did not violate Mo. Const. article III, § 21.

## CONCLUSION

The judgment of the trial court is affirmed insofar as it declares section A of SB 380 to be constitutional and denies injunctive relief. To the extent the judgment declares sections B, C and D constitutional, the judgment is reversed.

BENTON, PRICE, LIMBAUGH, ROBERTSON, COVINGTON, JJ., and BARNEY, Special Judge, concur.

WHITE, J., not sitting.