

# SUPREME COURT OF MISSOURI
## en banc

PRIORITIES USA, ET AL.,      )      *Opinion issued January 14, 2020*
)
     Respondents,      )
)
v.      )      No. SC97470
)
STATE OF MISSOURI, ET AL.,      )
)
     Appellants.      )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
**The Honorable Richard G. Callahan, Judge**

Priorities USA, Mildred Gutierrez, Ri Jayden Patrick, and West County Community Action Network ("Respondents")[1] filed a petition for declaratory and injunctive relief against the Missouri secretary of state, alleging section 115.427 unconstitutionally burdens individuals' right to vote. Specifically, they contend that prospective voters, because of their personal circumstances, will have difficulty adhering to section 115.427's photo identification requirements.[2] After a bench trial, the circuit court entered a judgment finding section 115.427 constitutional except for subsections

---

[1] Priorities USA is a nonprofit organization whose focus is to promote voting. Gutierrez and Patrick are registered Missouri voters. West County Community Action Network is a volunteer-run coalition that promotes racial equality in St. Louis.

[2] All statutory references are to RSMo 2016, unless otherwise specified.

2(1) and 3, the affidavit requirement. Subsection 2(1) permits individuals to vote with listed forms of non-photo identification if they execute an affidavit that meets certain requirements. The related subsection 3 provides the affidavit language. The circuit court enjoined the State from requiring individuals who vote under this option to execute the affidavit required under subsections 2(1) and 3. The circuit court also enjoined the State from disseminating materials indicating photo identification is required to vote. The State appeals.

Because the affidavit requirement of sections 115.427.2(1) and 115.427.3 is misleading and contradictory, the circuit court's judgment declaring the affidavit requirement unconstitutional is affirmed. Further, the circuit court did not err in enjoining the State from requiring individuals who vote under the non-photo identification option provided in section 115.427.2(1) to execute the affidavit or in enjoining the dissemination of materials indicating photo identification is required to vote. The circuit court's judgment is affirmed.

**Background**

In 2016, the legislature truly agreed to and passed section 115.427, which became effective in 2017. Section 115.427 establishes three options under which individuals can identify themselves for purposes of voting.

Under the first option, in subsection 1 of section 115.427, an individual can present acceptable forms of personal identification, all of which contain the individual's photograph. Under the second option, as found in subsection 2 of section 115.427, an individual who does not possess the types of photo identification provided under the first

2

option can vote by executing a statutorily specified affidavit and presenting a form of non-photo identification expressly authorized by section 115.427.2(1). The affidavit individuals are required to execute under the second option must be "substantially" in the form provided in section 115.427.3. Individuals must aver they are listed in the precinct register, do not possess personal identification approved for voting, are eligible to receive a Missouri non-driver's license free of charge, and are required to present a form of personal identification to vote. Section 115.427.3.

Finally, under the third option, individuals can cast a provisional ballot, which will be counted if: (1) the voter returns to the polling place during the polling hours and provides an approved form of photo identification under option one, or (2) the election authority compares the individual's signature with the signature reflected on the election authority's file and confirms the individual is eligible to vote at that particular polling place. Section 115.427.4.

Respondents filed a petition for declaratory and injunctive relief against the secretary of state, alleging section 115.427 unconstitutionally restricts the right to vote in Missouri by imposing burdens on prospective voters who, because of their personal circumstances, will have difficulty adhering to section 115.427's identification requirements.

After a bench trial, the circuit court entered a judgment finding section 115.427 constitutional except for the affidavit requirement in subsections 2(1) and 3. The circuit court determined the affidavit was contradictory and misleading and, accordingly, impermissibly infringed on an individual's right to vote. The circuit court enjoined the

3

State from requiring individuals who vote under the second option to execute the affidavit required under subsections 2(1) and 3. The circuit court also enjoined the State from disseminating materials that indicated photo identification is required to vote. The State appeals.[3]

## Standard of Review

This Court reviews *de novo* a challenge to the constitutional validity of a statute. *Williams v. Mercy Clinic Springfield Cmtys.*, 568 S.W.3d 396, 406 (Mo. banc 2019). A statute is presumed constitutional and will not be found unconstitutional unless it "clearly and undoubtedly violates the constitution." *Id.* (quotation omitted). "Nonetheless, if a statute conflicts with a constitutional provision or provisions, this Court must hold the statute invalid." *Weinschenk v. State*, 203 S.W.3d 201, 210 (Mo. banc 2006). The party challenging the statute's constitutional validity bears the burden of proving a violation. *Williams*, 568 S.W.3d at 406.

"The issuance of injunctive relief, along with the terms and provisions thereof, rests largely with the sound discretion of the trial court." *Edmunds v. Sigma Chapter of Alpha Kappa*, 87 S.W.3d 21, 29 (Mo. App. 2002). The circuit court "is vested with a broad discretionary power to shape and fashion relief to fit the particular facts, circumstances and equities of the case before it." *Burg v. Dampier*, 346 S.W.3d 343, 357 (Mo. App. 2011).

---

[3] This Court's jurisdiction is proper pursuant to article V, section 3 of the Missouri Constitution because this appeal involves the question of section 115.427's constitutional validity. Jurisdiction is proper over the case's other issues because, once jurisdiction attaches to a case, it extends to all issues. *In re Estate of Austin*, 389 S.W.3d 168, 170 n.9 (Mo. banc 2013).

## Analysis

## *I. The Affidavit Requirement*

The State argues the circuit court erred in enjoining the use of the affidavit when voting under option two because the affidavit requirement does not burden the right to vote and is constitutional. In response, Respondents assert the affidavit requirement is misleading and contradictory and, accordingly, impinges on voters' right to equal protection and the fundamental right to vote as guaranteed by the Missouri Constitution.

### *A. The Constitutional Validity of the Affidavit Requirement*

Two constitutional provisions establish "with unmistakable clarity" that Missouri citizens have a fundamental right to vote. *Weinschenk*, 203 S.W.3d at 211. Article I, section 25 provides that "all elections shall be free and open; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Article VIII, section 2 establishes the qualifications necessary to vote in Missouri. Missouri courts have made clear that, pursuant to these provisions, the right to vote is fundamental. *Weinschenk*, 203 S.W.3d at 211 & n.15.

Further, the Missouri Constitution guarantees its citizens the equal protection of the laws. Mo. Const. art. I, sec. 2 ("[A]ll persons are created equal and are entitled to equal rights and opportunity under the law."). But, as this Court has previously indicated, "some regulation of the voting process is necessary to protect the right to vote itself." *Weinschenk*, 203 S.W.3d at 212. To determine the level of scrutiny that should be applied to evaluate a statute addressing the right to vote, Missouri courts first evaluate the extent of the burden imposed by the statute. *Id.* If a statute severely burdens the right to

5

vote, strict scrutiny applies, which means the law "will be upheld only if it is narrowly tailored to serve a compelling state interest." *Peters v. Johns*, 489 S.W.3d 262, 273 (Mo. banc 2016) (quotation omitted). Conversely, when the law does not impose a heavy burden on the right to vote, it is subject to the less stringent rational basis review. *Weinschenk*, 203 S.W.3d at 215-16.

This Court need not evaluate the extent of the burden imposed by the affidavit requirement because the requirement does not satisfy even rational basis review. The State asserts the affidavit requirement combats voter fraud through "verify[ing] a voter's identity and eligibility to vote." Such an interest is legitimate – and even compelling. *Weinschenk*, 203 S.W.3d at 217. But to satisfy the lowest level of scrutiny, rational basis review, the affidavit requirement must be rationally related to this interest. *Id.* at 215-16. In other words, the requirement must be "a reasonable way of accomplishing this goal." *Peters*, 489 S.W.3d at 273 (quotations omitted).

The affidavit requirement is set out in sections 115.427.2(1) and 115.427.3. Subsection 2(1) provides that an individual who appears at a polling place without an approved form of photo identification under option one[4] but who is "otherwise qualified to vote" may cast a regular ballot provided the individual presents an approved form of non-photo identification as specified under option two in section 115.427.2(1)[5] and

---

[4] The following are approved forms of photo identification under option one: a Missouri driver's license, a Missouri nondriver's license, and other qualifying state or federal photo identification. Section 115.427.1.

[5] The following are approved forms of identification under option two:

 (a) Identification issued by the state of Missouri, an agency of the state, or a local election authority of the state;

6

executes an affidavit that meets certain requirements. Subsection 3 then provides that the affidavit must be "substantially in the following form":

> I do solemnly swear (or affirm) that my name is ...............; that I reside at ..........................................; that I am the person listed in the precinct register under this name and at this address; and that, under penalty of perjury, *I do not possess a form of personal identification approved for voting.* As a person who does not possess a form of personal identification approved for voting, I acknowledge that I am eligible to receive free of charge a Missouri nondriver's license at any fee office if desiring it in order to vote. *I furthermore acknowledge that I am required to present a form of personal identification, as prescribed by law, in order to vote.*
>
> I understand that knowingly providing false information is a violation of law and subjects me to possible criminal prosecution.

Section 115.427.3 (emphasis added). Although this language is consistent with the requirements listed in subsection 2, subsection 2 also requires that individuals must aver they do not possess a form of identification approved *under option one* and must further acknowledge that they are required to present a form of identification approved *under option one* to vote. Section 115.427.2(1).

The affidavit requirement in sections 115.427.2(1) and 115.427.3 is contradictory and misleading for several reasons. The affidavit language in subsection 3 requires

---

(b) Identification issued by the United States government or agency thereof;
(c) Identification issued by an institution of higher education, including a university, college, vocational and technical school, located within the state of Missouri;
(d) A copy of a current utility bill, bank statement, government check, paycheck, or other government document that contains the name and address of the individual;
(e) Other identification approved by the secretary of state under rules promulgated pursuant to this section.

Section 115.427.2(1).

7

individuals who vote under option two to aver that they "do not possess a form of personal identification approved for voting." Section 115.427.3. If "form of personal identification" means any identification, photo or non-photo, approved under section 115.427, then the affidavit is misleading because individuals voting under option two are required to swear under oath that they do not possess such identification but then must present non-photo identification approved under option two. Section 115.427.3. But if, consistent with the affidavit requirements in subsection 2(1),[6] the phrase "form of personal identification" means only photo identification approved under option one, then the later sentence in the affidavit that provides individuals must acknowledge they are "required to present a form of personal identification, as prescribed by law, in order to vote," *see* section 115.427.3, is contradictory because individuals can vote by presenting non-photo identification as described in option two. *See* section 115.427.2(1). For this reason, the language of subsection 2, which provides that individuals signing the affidavit must acknowledge they are "required to present a form of personal identification, as described in subsection 1 of this section, in order to vote," is inaccurate. *See* section 115.427.2(1).[7] Under either interpretation, an individual voting under option two is

---

[6] *See* section 115.427.2(1) (providing that an individual must sign an affidavit "averring that the individual does not possess a form of personal identification described in subsection 1 of this section").

[7] The State asserts this statement is accurate because the term "required" as used in section 115.427 does not mean "an if-and-only-if condition." "Absent express definition, statutory language is given its plain and ordinary meaning, as typically found in the dictionary." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. banc 2018). "Require" is defined as "to ask for authoritatively or imperatively: claim by right or authority: insist upon usu. with certainty or urgency: DEMAND, EXACT." *Webster's Third New International Dictionary* 1929 (3d ed. 2002). Accordingly, contrary to the State's argument, "required" does not contemplate an optional condition.

8

required to sign an ambiguous, contradictory statement under oath and subject to the penalty of perjury.

The testimony of several witnesses highlighted the confusion that resulted from the affidavit's contradiction. Gutierrez, who voted in November 2017 after signing the affidavit and presenting her social security card, voter identification card, and birth certificate, testified she found the affidavit's language concerning. By signing the affidavit, Gutierrez swore under penalty of perjury that she did not possess a form of personal identification approved for voting when, in reality, she "had all kinds of forms of identification." The affidavit led her to believe that she needed photo identification to vote in future elections.[8] Similarly, Patrick,[9] who voted in the November 2017 election by presenting their voter identification card and signing the affidavit, testified the language of the affidavit was confusing and ambiguous because it required them to state they do not possess personal identification when they, in fact, did have their voter identification card.[10] Both Gutierrez and Patrick testified they would not sign the affidavit to vote in a future election.

---

[8] In fact, after voting in the November 2017 election, Gutierrez spent more than an hour waiting in line at the department of motor vehicles and paid $11 to obtain a nondriver's license photo identification solely so she would be able to vote in future elections.

[9] Patrick is a transgender individual who prefers the pronoun "they" and its derivatives as opposed to "he" or "she."

[10] The meaning of the term "possess" as used in the affidavit is ambiguous. According to the secretary's director of elections, the term means the individual physically possesses identification at the polling place. But this definition cannot apply to the term's use in the next sentence, which seems to refer more broadly to constructive possession. *See* section 115.427.3 ("As a person who does not possess a form of personal identification approved for voting, I acknowledge that I am eligible to receive free of charge a Missouri nondriver's license at any fee office if desiring it in order to vote.").

9

The record further indicates that election officials did not understand the affidavit requirement. For example, Gutierrez was informed by an election official that she would need to obtain photo identification to vote in the next election, and one of Respondents' witnesses, David King, was told he could not vote despite presenting his voter registration card – an acceptable form of non-photo identification under option two. Section 115.427.2(1).

Although the State has an interest in combatting voter fraud, requiring individuals voting under option two to sign a contradictory, misleading affidavit is not a reasonable means to accomplish that goal. *See Ambers-Phillips v. SSM DePaul Health Ctr.*, 459 S.W.3d 901, 912 (Mo. banc 2015) (noting a statute fails rational basis review if it "rests on grounds wholly irrelevant to the achievement of the state's objective"). For this reason, the affidavit requirement of sections 115.427.2(1) and 115.427.3 does not pass muster under any level of scrutiny. Accordingly, the circuit court's judgment declaring the affidavit requirement unconstitutional is affirmed.

## B. The Remedy

After declaring the affidavit requirement unconstitutional, the circuit court enjoined the State from requiring voters who cast a ballot under option two to execute the affidavit. The State argues the circuit court erred in severing the affidavit requirement in its entirety. According to the State, two alternative, narrower remedies existed. First, the State argues the circuit court should have allowed the secretary of state to rewrite the affidavit language. In the alternative, the State argues the circuit court should have

10

severed only the parts of the affidavit requirement the circuit court found unconstitutional.

*1. Revision by the Secretary of State*

Section 115.427.3 provides that the affidavit's language must be *substantially* in the form provided by the statute, implying the form in section 115.427.3 need not be followed exactly. The State argues the circuit court should have allowed the secretary of state to modify the affidavit's language to address the circuit court's constitutional concerns.[11]

This proposed remedy falls short of rectifying the affidavit requirement's constitutional flaw. Although the affidavit need only be *substantially* in the following form provided in section 115.427.3, any modification must be consistent with the affidavit requirements in section 115.427.2(1), which the secretary of state has no

---

[11] The State proposes the affidavit's language could have been modified as follows:

> I do solemnly swear (or affirm) that my name is ...............; that I reside at ..........................................; that I am the person listed in the precinct register under this name and at this address; and that, under penalty of perjury, I appeared at a polling place without a form of personal identification described in section 115.427.1, RSMo do not possess a form of personal identification approved for voting. As a person who appeared at a polling place without a form of personal identification described in section 115.427.1, RSMo does not possess a form of personal identification approved for voting, I acknowledge that any otherwise qualified voter who does not already possess such identification may I am eligible to receive free of charge a Missouri nondriver's license at any fee office if desiring it in order to vote. I furthermore acknowledge that I am required to present a form of personal identification listed in section 115.427.1, RSMo to satisfy the requirements of section 115.427.1, RSMo, as prescribed by law, in order to vote. I understand that knowingly providing false information is a violation of law and subjects me to possible criminal prosecution.

Section 115.427.3 (the State's suggested additions underlined and deletions struck through).

11

authority to alter. Pursuant to section 115.427.2(1), the affidavit must include language "acknowledging that the individual is required to present a form of personal identification, as described in subsection 1 of this section, in order to vote." As emphasized above, such a statement is misleading, as option one photo identification is *not* required to vote. Accordingly, because any modification by the secretary of state must follow the requirements in section 115.427.2(1) and include this misleading statement, allowing the secretary of state to rewrite the affidavit's language is not an adequate remedy.[12]

## 2. The Affidavit's Severability

In the alternative, the State asserts the circuit court should not have enjoined the affidavit requirement entirely but instead should have severed only the portions of the text it found unconstitutional. While "[t]he provisions of every statute are severable," when a portion of a statute is found unconstitutional, the remaining provisions will not be upheld if they are "so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one." Section 1.140; *see also Weinschenk*, 203 S.W.3d at 219. This Court employs a two-part test to determine whether valid parts of a statute can be upheld despite the statute's unconstitutional parts. *Dodson v. Ferrara*, 491 S.W.3d

---

[12] For the first time in its reply brief, the State asserts the circuit court should have severed the unconstitutional language in section 115.427.2(1) and *then* directed the secretary of state to draft a new version of the affidavit. But this Court generally will not address assertions made for the first time in reply briefs "because a respondent has no opportunity to address the argument." *Berry v. State*, 908 S.W.2d 682, 684 (Mo. banc 1995).

542, 558 (Mo. banc 2016). First, this Court considers whether, "after separating the invalid portions, the remaining portions are in all respects complete and susceptible of constitutional enforcement." *Id.* Then, this Court considers whether "the remaining statute is one that the legislature would have enacted if it had known that the rescinded portion was invalid." *Id.*

As established above, the phrase "form of personal identification" as used in sections 115.427.2(1) and 115.427.3 is misleading and contradictory. For this reason, the portion of the affidavit requiring individuals to aver they "do not possess a form of personal identification approved for voting" and the portion of the affidavit requiring individuals to acknowledge they are "required to present a form of personal identification, as prescribed by law, in order to vote" as well as the corresponding language in section 115.427.2(1) are unconstitutional. Under either interpretation of the meaning of "form of personal identification," an individual voting under option two is required to sign an ambiguous, contradictory statement under oath and subject to the penalty of perjury.

After this language is severed, the affidavit language in section 115.427.3 reads, in pertinent part:

> I do solemnly swear (or affirm) that my name is ...............; that I reside at .........................................; that I am the person listed in the precinct register under this name and at this address; ~~and that, under penalty of perjury, I do not possess a form of personal identification approved for voting. As a person who does not possess a form of personal identification approved for voting,~~ I acknowledge that I am eligible to receive free of charge a Missouri nondriver's license at any fee office if desiring it in order to vote. ~~I furthermore acknowledge that I am required to present a form of personal identification, as prescribed by law, in order to vote.~~

13

> I understand that knowingly providing false information is a violation of law and subjects me to possible criminal prosecution.

(Severed language struck through).[13] The portion of the affidavit language providing, "I acknowledge that I am eligible to receive free of charge a Missouri nondriver's license at any fee office if desiring it in order to vote," as well as its corresponding clause in subsection 2(1), would also need to be severed to avoid a misstatement of the law, as the secretary of state's witness testified that not everyone is eligible for a free nondriver's license.

While removing this language eliminates any constitutional concerns, requiring individuals to sign this modified version of the affidavit would be futile, as all voters are required to sign a precinct register establishing the voter's identity and qualification to vote. *See* section 115.427.8 ("I hereby certify that I am qualified to vote at this election by signing my name and verifying my address by signing my initials next to my address."). The precinct register further provides notice that "[i]t is against the law for

---

[13] Similarly, the affidavit requirements in section 115.427.2(1) would read:

> An individual who appears at a polling place without a form of personal identification described in subsection 1 of this section and who is otherwise qualified to vote at that polling place may execute a statement, under penalty of perjury, averring that the individual is the person listed in the precinct register; averring that the individual does not possess a form of personal identification described in subsection 1 of this section; acknowledging that the individual is eligible to receive a Missouri nondriver's license free of charge if desiring it in order to vote; and acknowledging that the individual is required to present a form of personal identification, as described in subsection 1 of this section, in order to vote.

(Severed language struck through).

anyone to vote, or attempt to vote, without having a lawful right to vote." *Id.* Because the modified version of the affidavit would essentially replicate the information in the precinct register that every voter must sign, the legislature would not have enacted the modified affidavit. *See Akin v. Dir. of Revenue*, 934 S.W.2d 295, 300 (Mo. banc 1996) (emphasizing that in applying the severability doctrine, it is presumed that the legislature would not enact a statute with a meaningless sentence).[14]

Although the dissenting opinion does not reject this Court's holding that the affidavit requirement of sections 115.427.2(1) and 115.427.3 is misleading, contradictory, and unconstitutional, the dissenting opinion disagrees with this Court's decision to affirm the circuit court's severance of the affidavit requirement. The dissenting opinion presents two alternative remedies it believes should have been adopted instead. For the reasons below, both remedies are nonsensical.

First, the dissenting opinion suggests the circuit court should have severed section 115.427.2 in its entirety, rather than severing only the affidavit requirement language. Slip op. at 4. As the dissenting opinion notes, if option two – the non-photo identification option – is severed, two options for voting remain, option one and option three. *See* sections 115.427.1; 115.427.4. Under option one, an individual cannot vote without showing a government-issued photo identification. Section 115.427.1. Under option

---

[14] After the affidavit requirement language is severed, section 115.427.2(1) provides: "An individual who appears at a polling place without a form of personal identification described in subsection 1 of this section and who is otherwise qualified to vote at that polling place may cast a regular ballot, provided such individual presents one of the following forms of identification . . . ."

15

three, an individual's vote will not be counted unless (1) the voter returns to the polling place during the polling hours and provides an approved form of photo identification under option one, or (2) the election authority compares the individual's signature with the signature on the election authority's file and confirms the individual is eligible to vote at that particular polling place.  Section 115.427.4.  The record reflects the signature-matching process could result in an over-rejection of legitimate signatures, as there is no training or uniform standards election officials follow.[15]  So, regardless of whether individuals vote pursuant to option one or option three, to ensure their votes are counted, individuals must show photo identification.  Sections 115.427.1; 115.427.4(1)(a).

In effect, the dissenting opinion's proposal to sever option two in its entirety would result in individuals having to present government-issued photo identification to ensure their votes are counted.  In *Weinschenk*, this Court made clear that requiring individuals to present photo identification to vote is unconstitutional.  203 S.W.3d at 219. *Weinschenk* emphasized that some individuals, due to their personal circumstances, experience hurdles when attempting to obtain photo identification, *id.* at 215, a concern that remains relevant in the instant case.[16]  Obtaining photo identification requires

---

[15] As Respondents' forensic document examiner expert, Dr. Linton Mohammed, explained, a number of factors, such as age and illness, can impact an individual's signature.  Indeed, Gutierrez testified that, due to a health condition that causes tremors, her signature can differ significantly from one day to the next, and "there is no way that an ordinary person could look at that and match it."

[16] The dissenting opinion attempts to distinguish section 115.427 from the unconstitutional statute in *Weinschenk*, suggesting section 115.427 would be constitutional after severing section 115.427.2 in its entirety because section 115.427.6(1) provides that an individual can receive a photo identification free of charge.  Slip op. at 6.  This is not a sufficient distinction for two reasons.  First, the dissenting opinion disregards that, in holding the statute unconstitutional, the Court in *Weinschenk* emphasized not only the cost of photo identification but also the potential

appropriate documentation, time, and the ability to navigate bureaucracies. [17] *Id.* "Those things that require substantial planning in advance of an election to preserve the right to vote can tend to 'eliminate from the franchise a substantial number of voters who did not plan so far ahead.'" *Id.* (quoting *Harman v. Forssenius*, 380 U.S. 528, 539-40 (1965)). For these reasons, the dissenting opinion's first proposed remedy poses constitutional concerns and could not have been adopted by this Court. [18]

difficulties individuals experience when attempting to obtain photo identification. *Weinschenk*, 203 S.W.3d at 213-15. Second, despite the dissenting opinion's assertion, photo identification obtained for the purpose of voting is not always free of charge under section 115.427. The record reflects that some individuals attempting to obtain photo identification, including Gutierrez, were required to pay a fee. Further, pursuant to section 115.427.6(1), each individual is afforded only one free photo identification. As a result, with the exception of individuals older than 70 whose photo identifications do not expire, prospective voters, in future elections, will be required to pay a fee to obtain photo identification.

[17] For example, Patrick testified that they do not have appropriate documentation to obtain a birth certificate or nondriver's license that reflects their correct gender. The record reflects that to obtain photo identification, Patrick would be required to obtain a court order or affidavit from a health care practitioner indicating they underwent gender transformation surgery. For others, difficulties such as lack of transportation or time could prevent access to photo identification. "[M]any voters who are elderly, disabled, or have certain physical or mental problems simply cannot navigate that process or any long waits successfully." *Weinschenk*, 203 S.W.3d at 215 (quoting *Common Cause/Ga. League of Women Voters of Ga., Inc. v. Billlups*, 439 F. Supp.2d 1294, 1347 (N.D. Ga. 2006)).

[18] The dissenting opinion's reliance on *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), and *Lee v. Virginia State Board of Elections*, 843 F.3d 592 (4th Cir. 2016), is misplaced. Slip op. at 4-5. These cases are not binding on this Court, as the plaintiffs in both of these cases challenged state voter identification laws in federal court under the *federal* constitution, while Respondents in the instant case assert challenges in state court under the Missouri constitution. Both the right to vote and right to equal protection under the Missouri constitution are "even more extensive than those provided by the federal constitution." *Weinschenk*, 203 S.W.3d at 204. Further, both *Crawford* and *Lee* can be distinguished on their facts. In both of those cases the record failed to demonstrate the voter identification law burdened voters. *Crawford*, 553 U.S. at 189; *Lee*, 843 F.3d at 606. Specifically, *Crawford* emphasized the record failed to demonstrate that voters experienced difficulties obtaining photo identification. *Crawford*, 553 U.S. at 201. Similarly, *Lee* emphasized the statute at issue imposed an even lighter burden than the statute in *Crawford*, as the voters were not required to present any documentation to obtain free photo identification. 843 F.3d at 606. Unlike in *Crawford* and *Lee*, Respondents in the instant case have demonstrated that requiring photo

17

Second, the dissenting opinion proposes the circuit court could have severed only the contradictory affidavit language "but maintain[ed] the affidavit requirement for non-photo identification voting." Slip op. at 6. Notably, the dissenting opinion is not specific regarding which part of the affidavit's language it would have severed. Regardless, as made clear above, after the unconstitutional provisions are severed, the modified version of the affidavit would essentially replicate the information in the precinct register that every voter must sign. Accordingly, the legislature would not have enacted the modified affidavit. *See Akin*, 934 S.W.2d at 300.

For these reasons, the dissenting opinion's proposed remedies are nonsensical, and the circuit court did not err in enjoining the affidavit requirement in its entirety.

## II. The Secretary of State's Materials

The circuit court also enjoined the State from disseminating "materials with the graphic that voters will be asked to show a photo identification card without specifying other forms of identification which voters may also show." The State argues the circuit court erred in enjoining the secretary of state from disseminating such materials because these materials accurately reflect section 115.427's requirements.

Section 115.427.5 assigns the secretary of state the duty to notify the public of the personal identification requirements of section 115.427. Section 115.427.5 provides:

> The secretary of state shall provide advance notice of the personal identification requirements of subsection 1 of this section in a manner calculated to inform the public generally of the requirement for forms of

identification burdens their right to vote. The record includes ample evidence of the difficulties individuals like Gutierrez and Patrick have faced or could potentially face in the future if photo identification were required for their votes to be counted.

18

personal identification as provided in this section.  Such advance notice shall include, at a minimum, the use of advertisements and public service announcements in print, broadcast television, radio, and cable television media, as well as the posting of information on the opening pages of the official state internet websites of the secretary of state and governor.

The advertisement promulgated by the secretary of state that the circuit court found problematic provided:

Voters: Missouri's new Voter ID law is now in effect.  When you vote, you will be asked for a photo ID.  A Missouri driver or nondriver license works but there are other options, too.  If you don't have a photo ID to vote, call 866-868-3245 and we can help.

As the circuit court determined, materials like this advertisement mislead individuals into believing photo identification is required to vote.  This finding is supported by the record, as Respondents' political science expert, Dr. Kenneth Mayer, testified that materials that are incomplete and fail to describe all of the forms of identification permitted by section 115.427 cause voter confusion and decrease voter turnout.

The State asserts the advertisement is an accurate statement of section 115.427 because when individuals vote they are asked to show photo identification.  But no part of section 115.427 mandates that election officials ask individuals for photo identification.  Indeed, at trial the State asserted that while election officials may request photo identification, they are not required to, as "all [three] methods of voting are equally valid."  The advertisement misleads individuals into believing photo identification is required to vote, which is an inaccurate characterization of section 115.427.[19]

---

[19] The dissenting opinion asserts the advertisement is not misleading because it "clearly indicates that a voter has other options" besides voting with photo identification.  Slip op. at 8.  But the secretary's use of the phrase "other options" in the advertisement is not a reference to alternative

After finding the advertisement misleading, the circuit court had discretion to "shape and fashion relief to fit the particular facts, circumstances and equities of the case before it." *State ex rel. Ideker, Inc. v. Grate*, 437 S.W.3d 279, 287 (Mo. App. 2014). The injunction was limited in scope, as it enjoined the State from disseminating only those "materials with the graphic that voters will be asked to show a photo identification card without specifying other forms of identification which voters may also show." The decision to enjoin these materials is well-supported in the record. The circuit court did not abuse its discretion in enjoining the secretary of state from disseminating materials that provide a misleading description of section 115.427's requirements.

---

ways to vote without presenting photo identification. Rather, when read in the context of the entire advertisement, "other options" refers to alternative forms of *photo* identification – other than a Missouri driver's license or nondriver's license – that an individual can present to vote. Even at best, the meaning of "other options" in the advertisement is unclear; this phrase does not rectify the advertisement's misleading description of section 115.427.

**Conclusion**

Because the affidavit requirement of sections 115.427.2(1) and 115.427.3 is misleading and contradictory, the circuit court's judgment declaring the affidavit requirement unconstitutional is affirmed. Further, the circuit court did not err in enjoining the State from requiring individuals who vote under the non-photo identification option provided in section 115.427.2(1) to execute the affidavit or in enjoining it from disseminating materials indicating photo identification is required to vote. The circuit court's judgment is affirmed.

_____
Mary R. Russell, Judge

Draper, C.J., Wilson, Breckenridge and
Stith, JJ., concur; Powell, J., dissents in separate
opinion filed; Fischer, J., concurs in opinion of
Powell, J.



# SUPREME COURT OF MISSOURI
## en banc

PRIORITIES USA, et al.,        )
         )
         Respondents,     )
         )
v.         )      No. SC97470
         )
STATE OF MISSOURI, et al.,     )
         )
         Appellants.      )

### DISSENTING OPINION

I respectfully dissent. If the affidavit requirement set forth in section 155.427[1] is ambiguous, contradictory, and unconstitutional as the principal opinion proclaims, the opinion errs in severing the entire affidavit requirement without also severing the non-photo identification option set out in section 115.427.2 in its entirety. Because the legislature would not have enacted the non-photo identification option without an accompanying affidavit requirement, the principal opinion's remedy is contrary to law.

Under *Dodson v. Ferrara*, the valid parts of a statute can be upheld if the remaining portions of the statute are complete and susceptible of constitutional enforcement, and the

---

[1] All statutory references are to RSMo 2016, unless otherwise specified.

legislature would have enacted the statute without the rescinded unconstitutional portion. 491 S.W.3d 542, 558 (Mo. banc 2016). Here, the legislature sought to encourage citizens to vote with a valid photo identification when it enacted section 115.427. Section 115.427, however, authorizes other voting identification methods and allows voting without photo identification as long as the voter signs an affidavit affirming voter identity and eligibility. According to the principal opinion, portions of this affidavit are ambiguous and contradictory and, thereby, unconstitutional. The principal opinion then finds the only way to cure this constitutional problem is to sever the entire affidavit requirement from the statute. But this holding fails to follow the dictates of *Dodson*.

Under a proper *Dodson* analysis, this Court must ask whether the legislature would have allowed the option to vote with non-photo identification without the affidavit requirement. Reading section 115.427, it is clear the statute has several objectives. First, it aims to promote secure elections and quick voter identification by requiring photo identification. Second, it aims to further safeguard election security by requiring voters without a compliant identification to swear to their identities and voting eligibility. Finally, it aims to promote photo identification voting by informing non-photo identification voters of eligibility for a free Missouri nondriver license, further facilitating secure and quick elections in the future. The principal opinion's complete elimination of the affidavit requirement eviscerates these goals.

In interpreting statutes, "[o]ur polestar is the intent of the legislature." *Centerre Bank of Crane v. Dir. of Revenue*, 744 S.W.2d 754, 759 (Mo. banc 1988). The inclusion of an affidavit requirement is the only difference between sections 115.427.1, the photo

2

identification option, and 115.427.2, the non-photo identification option. The legislature clearly intended to distinguish between these separate voting options. The principal opinion does away with this distinction. Section 115.427 uses mandatory language, allowing an exception to photo identification voting only if the voter executes an affidavit or casts a provisional ballot. Despite this mandatory language, the statute as modified by the principal opinion no longer treats photo identification voting any differently than non-photo identification voting. Instead, what remains is a statute that says people "seeking to vote in a public election **shall** establish their identity and eligibility to vote" by presenting one of the enumerated forms of photo identification to establish eligibility to vote, § 115.427.1 (emphasis added), but then proceeds to allow other forms of identification such as a utility bill under 115.427.2 with no qualification. The legislature's use of "shall" in section 115.427.1 indicates it would not have allowed non-photo identification voting under section 115.427.2 without the affidavit requirement.

Furthermore, as the principal opinion points out, it is presumed that the legislature would not enact a meaningless statute. *See Akin v. Dir. of Revenue*, 934 S.W.2d 295, 300 (Mo. banc 1996). Without the affidavit requirement, the statute makes no meaningful

3

change to Missouri's voter identification procedures.[2]  It is clear, therefore, the legislature would not have enacted section 115.427.2 and allowed Missouri voters to vote with a non-photo identification without the affidavit requirement.

A more appropriate remedy to the constitutional issue identified in the principal opinion would be to sever the entirety of section 115.427.2, disallowing the use of non-photo identification and leaving voters with two options: photo identification or a provisional ballot.  This solution achieves the legislative goal of encouraging voting with a compliant photo identification or the alternative of casting a provisional ballot.  Such a solution would likely pass constitutional muster.

In *Crawford v. Marion County Election Board*, 553 U.S. 181, 185-86  (2008), the United States Supreme Court upheld an Indiana voter identification statute that proscribed, in relevant part: (1) Citizens voting in person on election day must show photo identification issued by the government; (2) Indigent voters or voters with a religious objection to being photographed could cast a provisional ballot that would be counted only

_____

[2]  Prior to the 2016 amendment, there were five forms of identification accepted at the polls: (1) identification issued by the State of Missouri, an agency of the state, or a local election authority; (2) identification issued by the federal government or an agency thereof; (3) identification issued by a Missouri institution (public or private) of higher education, including a university, college, vocational, or technical school; (4) a copy of a current utility bill, bank statement, paycheck government check, or other government document that contains the name and address of the voter; or (5) a driver's license or state identification card issued by another state.  § 115.427.1, RSMo Supp. 2002 (controlling in 2015 due to *Weinschenk v. State*, 203 S.W.3d 201 (Mo. banc 2006), enjoining enforcement of the 2006 amended statute);  *see also Acceptable IDs to Vote*, MO. SECRETARY ST., https://web.archive.org/web/20150316015603/https://www.sos.mo.gov/elections/goVote Missouri/howtovote.aspx/ (last visited Dec. 16, 2019).

if they execute an affidavit[3] within 10 days after the election; (3) A voter who has a photo identification but could not present it on election day could file a provisional ballot that would be counted if he or she present's his or her identification within 10 days; (4) No identification is required to register to vote; and (5) Any qualified voters able to establish their residence and identity are eligible to receive a free photo identification from the state. The Court concluded the burdens imposed by the statute on eligible voters without a current photo identification to travel to Indiana's bureau of motor vehicles and obtain a free identification are not substantial enough to justify striking down the statute, and the burdens imposed on eligible voters who may not be able to obtain the free identification because of difficulty obtaining a birth certificate, religious objections to being photographed, or homelessness were mitigated by the statute's provisional ballot allowance. *Id.* at 199. The provisional ballot allowance set forth in section 115.427.4, therefore, would likely satisfy any constitutional concerns related to the severance of the entirety of section 115.427.2.[4]

---

[3] "The affidavit must state that (1) the person executing the affidavit is the same individual who cast the provisional ballot; and (2) the affiant is indigent and unable to obtain proof of identification without paying a fee or has a religious objection to being photographed." *Crawford*, 553 U.S. at 186 n.2.

[4] Another voter photo identification law has been upheld in federal court due to the allowance of a provisional ballot without a photo identification. In *Lee v. Virginia State Board of Election* 843 F.3d 592 (4th Cir. 2016), Virginia's law requiring all voters to present a photo identification to cast a ballot in all elections was upheld. Under the law, voters without photo identification may cast a provisional ballot that will be counted if the voter presents a photo identification within three days of the election. *Id.* at 599. The Fourth Circuit did not find an undue burden on minority voting nor evidence suggesting discriminatory intent and upheld the law against allegations of Voting Rights Act violations and First Amendment, Equal Protection, Fifteenth Amendment, and Twenty-Sixth Amendment violations. *Id.* at 607-08.

Likewise, in Missouri, this Court addressed the constitutionality of a photo voter identification statute in *Weinschenk v. State,* 203 S.W.3d 201 (Mo. banc 2006). The constitutional issue in *Weinschenk* was the absence of options for eligible registered voters without the requisite photo identification, especially given the fact that those voters would have to "expend money to gather the necessary documentation to obtain it in order to exercise their right to vote." *Id.* at 213. Here, if this Court were to sever sections 115.427.2 and 115.427.3, any voter without photo identification as required by section 115.427.1 would still be allowed to cast a provisional ballot and, should a voter wish to obtain a compliant photo identification, the voter could receive compliant identification at no cost with the assistance of the state. Therefore, striking the entirety of sections 115.427.2 and 115.427.3 would leave a voter identification law that meets legislative intent, passes the *Dodson* test, and passes constitutional mandates.

A more restrained, but acceptable, remedy would be to sever only the contradictory affidavit language but maintain the affidavit requirement for non-photo identification voting. Rescinding this language from the affidavit would leave an affirmation of identity and voter eligibility and an acknowledgment of eligibility for a free photo identification in the affidavit. This solution achieves the legislative goal of promoting voting by photo identification while giving eligible registered voters other options to exercise their constitutional right to vote without imposing more than a *de minimis* burden on their suffrage. Keeping this version of the affidavit requirement would also maintain the legislature's distinction between photo identification and non-photo identification voting. This more surgical approach maintains fidelity to the legislative intent of requiring photo

6

identification while giving eligible registered voters other options to exercise their right to vote if they cannot meet the photo identification requirement and ensures election security.

Instead of taking either of these alternatives, the principal opinion's complete removal of the affidavit requirement from non-photo identification voting eliminates the intended distinction between voter identification options and prevents the legislation from having any effect on voting identification procedures. Surely the legislature would not have passed a new law that has no effect; *Akin* requires this Court to make such a presumption.[5]

---

[5] To ensure its legislation has its desired effect, the General Assembly may take further action to promote secure and quick elections in response to the principal opinion. *Veasy v. Abbott*, 888 F.3d 792 (5th Cir. 2018), provides an example of the state legislature curing constitutional defects in a voter identification law through additional legislation. In 2011, Texas enacted a law requiring voters to present one of five forms of government-issued identification to vote. *Id.* at 796. The law was challenged, and the state was enjoined from enforcing the voter identification provisions because of an unlawful disparate impact on minority voters and discriminatory purpose in enactment. *Id.* The Fifth Circuit affirmed the disparate impact finding but reversed the discriminatory purpose finding. *Id.* (citing *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc)).

Later, the Texas legislature enacted amendments to the law expanding the list of acceptable identification and required implementation of mobile locations for obtaining election identification certificates. *Id.* at 797. Texas sought reconsideration in light of the amendments, and, while the district court enjoined enforcement of the amendments, the Fifth Circuit reversed. *Id.* The Fifth Circuit held that, because the amended voter identification law "constitutes an effective remedy for the only deficiencies testified to in [the previous law], . . . the State has acted promptly following this court's mandate, and there is no equitable basis for subjecting Texas to ongoing federal election scrutiny[.]" *Id.* at 804. *Veasy* illustrates how frustrating the intent of voter identification legislation by unnecessarily severing the entire affidavit requirement in section 115.427.3 may ultimately encourage future legislative action resulting in more restrictive, but constitutional, voter identification laws. A more finely honed remedy in this case would immediately serve legislative intent without further action by the General Assembly.

Separate from the voting identification procedure, the secretary of state's advertising materials to disseminate information about the new voter identification requirements should not be enjoined. The legislature imposed a duty on the secretary of state to provide notice to Missouri voters ahead of an election "of the personal identification requirements of subsection one of this section." § 115.427.5. Subsection 1 requires election officials to ask for certain types of photo identification at the polls. This change in the law is accurately described by the advertising material that the circuit court enjoined:

> Voters: Missouri's new Voter ID law is now in effect. When you vote, you will be asked for a photo ID. A Missouri driver or nondriver license works **but there are other options, too**. If you don't have a photo ID to vote, call 866-868-3245 and we can help.

(Emphasis added). While the circuit court found that the advertisement implies a photo identification card is required for voting, the advertisement's language clearly indicates that a voter has other options. A plain reading of the advertisement accurately reflects the law as provided in section 115.427. The language also includes notice that the state will help individuals without photo identification and a resource for additional information. This advertisement is not misleading and is a lawful execution of the secretary of state's statutory duty under section 115.427.5.

While the affidavit requirement of sections 115.427.2(1) and 115.427.3 may be contradictory, the remedy offered by the principal opinion is improper. Furthermore, I disagree that the secretary of state should be enjoined from disseminating educational

8

materials about the new voter identification law pursuant to 115.427.5. For these reasons, I respectfully dissent.

_____
W. Brent Powell, Judge